**Donna L. TODD, Plaintiff–Appellee,**

v.

**UNITED STATES of America and R.S. Wintrode, Jr., District Director, Internal Revenue Service, Defendants–Appellants.**

**No. 85–4106.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 5, 1986.

Order and Opinion Decided June 10, 1988.

Michael L. Paup, Roger M. Olsen, Jonathan S. Cohen and Elaine Ferris, Dept. of Justice, Washington, D.C., for defendants-appellants.

Stephen L. Pevar, American Civil Liberties Union, Denver, Colo., and W. Corbin Howard, Billings, Mont., for plaintiff-appellee.

Before POOLE, NORRIS and BEEZER, Circuit Judges.

### ORDER

The court's opinion filed October 20, 1986, and reported at 802 F.2d 1152–58 (9th Cir.1986), is hereby withdrawn and replaced with the attached opinion.

### OPINION

BEEZER, Circuit Judge:

This appeal is the result of a *Bivens*[1] action against IRS agents for damages arising out of a penalty imposed under 26 U.S.C. § 6702. The United States and the individual IRS agents appeal a partial denial of their motion for summary judgment. The district court dismissed Todd's claims against the United States and the individual defendants acting in their "official" capacities on sovereign immunity grounds. The district court upheld Todd's claims

---

1. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

against the IRS agents in their "individual" capacities, concluding that the agents violated Todd's "clearly established" First and Fifth Amendment rights. We reverse.

## I

The plaintiff, Donna L. Todd, filed a federal income tax return and an amended return for 1982. Below the jurat,[2] she typed "signed involuntarily under penalty of statutory punishment."

The IRS assessed a $500 penalty against Todd pursuant to 26 U.S.C. § 6702.[3] In response to a letter from Todd, R.S. Wintrode, Jr., the IRS District Director in Helena, Montana, wrote to Todd and explained that the added statement invalidated the tax return. Wintrode attached a photocopy of section 6703, which establishes procedures for contesting the penalty.[4]

In response to further correspondence from Todd, the Chief of the IRS "Selection Unit" in Ogden, Utah, explained by letter that "the penalty was charged because you altered the jurat." This letter also apprised Todd of the method by which she could contest the assessment.

Todd did not pursue the judicial remedies provided by section 6703. Accordingly, the IRS attached Todd's bank account, which contained $140, and filed a tax lien against her real property in Billings, Montana.

In May of 1984, Todd filed suit in district court, alleging violations of various consti-

---

**2.** The jurat is the portion of the return which provides for the taxpayer's and the preparer's signatures and states:

> Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete.

**3.** 26 U.S.C. § 6702 provides:

(a) Civil penalty.—If—

(1) any individual files what purports to be a return of the tax imposed by subtitle A but which—

(A) does not contain information on which the substantial correctness of the self-assessment may be judged, or

(B) contains information that on its face indicates that the self-assessment is substantially incorrect; and

(2) the conduct referred to in paragraph (1) is due to—

(A) a position which is frivolous, or

(B) a desire (which appears on the purported return) to delay or impede the administration of Federal income tax laws,

then such individual shall pay a penalty of $500.

(b) Penalty in addition to other penalties.— The penalty imposed by subsection (a) shall be in addition to any other penalty provided by law.

**4.** Section 6703 provides:

(a) Burden of proof.—In any proceeding involving the issue of whether or not any person is liable for a penalty under section 6700, 6701, or 6702, the burden of proof with respect to such issue shall be on the Secretary.

(b) Deficiency procedures not to apply.—Subchapter B of chapter 63 (relating to deficiency procedures) shall not apply with respect to the assessment or collection of the penalties provided by sections 6700, 6701, and 6702.

(c) Extension of period of collection where person pays 15 percent of penalty.—

(1) In general.—If, within 30 days after the day on which notice and demand of any penalty under section 6700, 6701, or 6702 is made against any person, such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution of a proceeding begun as provided in paragraph (2). Notwithstanding the provisions of section 7421(a), the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.

(2) Person must bring suit in district court to determine his liability for penalty.—If, within 30 days after the day on which his claim for refund of any partial payment of any penalty under section 6700, 6701, or 6702 is denied (or, if earlier, within 30 days after the expiration of 6 months after the day on which he filed the claim for refund), the person fails to begin a proceeding in the appropriate United States district court for the determination of his liability for such penalty, paragraph (1) shall cease to apply with respect to such penalty, effective on the day following the close of the applicable 30-day period referred to in this paragraph.

(3) Suspension of running of period of limitations on collection.—The running of the period of limitations provided in section 6502 on the collection by levy or by a proceeding in court in respect of any penalty described in paragraph (1) shall be suspended for the period during which the Secretary is prohibited from collecting by levy or a proceeding in court.

26 U.S.C. § 6703.

tutional rights. The following month, the Department of Justice offered to stipulate to entry of judgment against the United States for a return of all monies obtained by levy, to release all liens, and to pay attorney's fees and costs. Todd refused to so stipulate.

The government concedes that the section 6702 penalty was improperly assessed against Todd. Todd's return was complete and accurate. She provided all the information necessary to process her return and claimed no frivolous deductions. Thus, neither of the prerequisites contained in section 6702(a)(1) was satisfied. Nevertheless, the government contends that the district court erred in concluding that the IRS agents' conduct contravened clearly established constitutional rights. The government notes that no court has held that the conduct at issue in this case violates a taxpayer's First and Fifth Amendment rights. We find the government's argument persuasive.

## II

■ We have jurisdiction pursuant to 28 U.S.C. § 1291. In *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2819, 86 L.Ed.2d 411 (1985), the Supreme Court concluded that denial of a claim to qualified immunity is appealable under the collateral order doctrine, set forth in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), notwithstanding the absence of a final judgment.

The Supreme Court's grant of appellate jurisdiction under *Mitchell* is narrow. We have jurisdiction only to decide if defendants' conduct violated Todd's clearly established constitutional rights. The government advances the defense on appeal that

Todd's *Bivens* action is supplanted by alternative adequate and effective remedies. Following *Mitchell,* we conclude that we do not have jurisdiction to decide this claim. Accordingly, we confine this analysis to the qualified immunity issue.

## III

Defendants' assertion of qualified immunity presents a question of law. *Mitchell v. Forsyth,* 472 U.S. at 528 n. 9, 530, 105 S.Ct. at 2816 n. 9, 2817. We review the denial of qualified immunity de novo. *White v. Pierce County,* 797 F.2d 812, 814 (9th Cir.1986).

### A

In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court created a strictly objective standard for evaluating claims to qualified immunity.[5] The *Harlow* Court held:

> government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.[6] Applying the *Harlow* test, we are here required to identify the applicable law and to determine whether that law was "clearly established" at the time defendants acted. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984). The rationale underlying *Harlow* is simply put: If the controlling law is not clearly established, a reasonable person would not

---

**5.** In an earlier decision, *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Court advanced a two-part test for qualified immunity, focusing on both subjective and objective factors. In *Wood,* the Court required a defendant seeking immunity to establish that he had acted with permissible intentions and without disregard for the settled law. *Wood,* 420 U.S. at 321–22, 95 S.Ct. at 1000. In *Harlow,* the Court expressly rejected one part—the subjective aspect—of the *Wood* analysis. *Harlow,* 457 U.S. at 815–18, 102 S.Ct. at 2736–38.

**6.** The district court correctly ruled that IRS agents are entitled to qualified immunity from suit. In *Mitchell,* 472 U.S. at 511, 105 S.Ct. at 2807, the Supreme Court concluded that the Attorney General of the United States was only entitled to qualified immunity as opposed to absolute immunity. The holding in *Mitchell* forecloses a finding that IRS agents are entitled to anything more than a qualified immunity defense. *See Cameron v. IRS,* 773 F.2d 126, 128 (7th Cir.1985).

be expected to know how to structure his conduct in order to avoid liability. In such a case the defendant will be immune from suit. On the other hand, if a defendant has violated clearly established law, he will generally be liable. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Davis*, 468 U.S. at 191, 104 S.Ct. at 3017. Additionally, a public official who violates established standards may be immune from suit, if he is able to claim "extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard." *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738.

The district court held that the defendants violated Todd's Fifth Amendment right to due process and First Amendment right to freedom of speech. *Todd v. United States*, 613 F.Supp. 552, 556 (D.Mont. 1985). We now analyze these holdings in view of the *Harlow* test.

### B

The district court reached the following conclusion without citation to relevant law: "By attaching her bank account and putting a lien on her property without first having a hearing, defendants violated plaintiff's Fifth Amendment right to due process." *Todd*, 613 F.Supp. at 556. This holding overlooks half a century of precedent.

█ Well-settled is the rule that the United States government's revenue requirements justify use of summary procedures in collection of taxes. *Phillips v. Commissioner*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931). In *Phillips* the Supreme Court held:

> Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate. Delay in the judicial determination of property rights is not uncommon where it is essential that gov-

ernmental needs be immediately satisfied.

*Id.*, 283 U.S. at 596–97, 51 S.Ct. at 611 (citations omitted). Since *Phillips*, the Supreme Court has consistently held that post-deprivation hearings satisfy the demands of due process, when revenue collection is at issue. *See, e.g., Bob Jones University v. Simon*, 416 U.S. 725, 746–48, 94 S.Ct. 2038, 2050–52, 40 L.Ed.2d 496 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 90–92, 92 S.Ct. 1983, 1999–2000, 32 L.Ed.2d 556 (1972). Accordingly, taxpayers do not have the right to a hearing prior to collection efforts by the IRS.

█ Nevertheless, Congress recognized that assessment of a $500 penalty under section 6702 could impose an acute financial hardship on certain taxpayers. Accordingly, Congress devised a rapid and inexpensive procedure, codified at section 6703, for challenging a section 6702 assessment.[7] The remedies provided in section 6703 satisfy the requirements of due process. *Jolly v. United States*, 764 F.2d 642, 645–46 (9th Cir.1985); *Boday v. United States*, 759 F.2d 1472, 1475 (9th Cir.1985).

█ In a letter dated June 30, 1983, the IRS advised Todd of the procedures available under section 6703. Todd, however, did not avail herself of those remedial procedures. Thus, we conclude that Todd had no clearly established Fifth Amendment right to a hearing prior to the attachment of her bank account and the filing of a lien against her real property, except under the section 6703 procedures of which the IRS notified her and of which she failed to avail herself.

### C

If the IRS had properly assessed Todd under section 6702, we would have little difficulty now in concluding that Todd's First Amendment rights were not abridged. The First and Third Circuits have recently rejected similar First Amendment chal-

---

**7.** This section permits a taxpayer to pay 15 percent of the penalty ($75) and file a claim for refund within 30 days of the assessment. If the IRS denies the refund, the taxpayer may bring an action in the district court. While the case is pending before the district court, the IRS may not collect the remaining 85 percent of the penalty. *See supra* note 4.

lenges to section 6702. *See Eicher v. United States,* 774 F.2d 27, 29–30 (1st Cir.1985); *Kahn v. United States,* 753 F.2d 1208, 1216–17 (3d Cir.1985); *Welch v. United States,* 750 F.2d 1101, 1108–09 (1st Cir. 1985).[8] These courts reasoned that section 6702 penalizes the furnishing of inaccurate information on a tax return, rather than the taxpayer's expression of unpopular political views. When a taxpayer provides inaccurate or incomplete information on a tax return, for a frivolous reason, the IRS may impose a penalty under section 6702 without infringing the taxpayer's First Amendment rights. *Eicher,* 774 F.2d at 29–30; *Kahn,* 753 F.2d at 1216–17; *Welch,* 750 F.2d at 1108–09.

Todd's tax return was, however, both complete and accurate. She was penalized for typing the addendum "signed involuntarily under penalty of statutory punishment," below the jurat.

The district court correctly observed that Todd raised no challenge to the constitutionality of section 6702. *Todd,* 613 F.Supp. at 555. The gravamen of Todd's First Amendment claim is that the IRS unlawfully invoked section 6702 to penalize her for expressing dissatisfaction with the tax laws of the United States. Accordingly, the foregoing cases cannot control this decision. To determine whether the IRS violated a clearly established First Amendment right, we must look elsewhere.

The district court stated, in conclusory fashion: "The clearly established constitutional right is the First Amendment guarantee of freedom of speech. It is difficult to imagine a more fundamental and clearly established constitutional right than that of freedom of speech." *Todd,* 613 F.Supp. at 557 (*citing Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974), and *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969)). This cursory analysis is seriously flawed, as the Supreme Court's reasoning in *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) recently demonstrated. In *Anderson,* the Court held that the right referenced by the *Harlow* test is not a general constitutional guarantee (*e.g.,* the Fourth Amendment freedom from unreasonable searches and seizures), but its application in a particular context (*e.g.,* whether the particular facts gave rise to probable cause or exigent circumstances).

The operation of [the *Harlow*] standard ... depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation.... [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a

---

**8.** We recently held that the IRS may assess a section 6702 penalty against an individual who, though not legally obligated to file a tax return, submits a Form 1040 to the IRS claiming a "war tax" deduction. *See Bradley v. United States,* 817 F.2d 1400 (9th Cir.1987). In *Bradley* the appellant claimed the section 6702 assessment violated his First Amendment right to freedom of expression. We noted that "Bradley's purported return contains little more than a political message voluntarily submitted to the I.R.S." *Bradley,* 817 F.2d at 1405. However, we rejected the appellant's First Amendment claim concluding that "the penalty at issue was assessed in response to the submission of a frivolous and administratively burdensome purported return. This is a penalty on conduct, not expression."

*Id.* Finally, we held that in the context of section 6702, the government's compelling interest in maintaining a sound tax system justifies the alleged restriction on free speech. *Id.*

*Bradley* is distinguishable from this case. In *Bradley* the appellant was not required to file a tax return. Todd was so required. More significantly, Bradley's tax return was frivolous on its face. Todd's tax return was not frivolous. Nevertheless, our decision in *Bradley* strongly supports the conclusion that Todd has no clearly established First Amendment right to express her dissatisfaction with the government on her tax return. *See id.* at 1405–06. We note that our decision in *Bradley* was not available to the district court when it rendered its decision.

reasonable official would understand that what he is doing violates that right: This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Anderson,* 107 S.Ct. at 3038–39 (citations omitted). Thus we must determine, first, whether Todd had a clearly established First Amendment right to express her dissatisfaction with the tax laws on her tax return and second, whether it was clearly unlawful to assess the penalty under section 6702, in the context of preexisting law.

■ First, we note that neither *Spence* nor *Brandenburg* speaks to the question whether the First Amendment permits a taxpayer to express dissatisfaction with the United States' tax laws on a tax return. Other First Amendment cases cited by Todd similarly fail to address this question. In short, Todd is unable to identify Supreme Court or circuit court authority which is factually relevant. *See Anderson,* 107 S.Ct. at 3039–40. Accordingly, we must conclude that Todd did not have a clearly established First Amendment right to express her dissatisfaction with the tax laws on her tax return.[9]

Second, the cases cited by Todd do not place IRS agents on notice that the wrongful, good faith imposition of a penalty under section 6702 abridges a taxpayer's First Amendment rights. Independently, we have been unable to find any authority to support the district court's contrary conclusion.

In fact, section 6702 had only been in effect for a period of less than a year when defendants assessed the penalty against Todd. The IRS agents entrusted with section 6702's enforcement were not experienced in, or otherwise familiar with, the parameters of that provision. At the time defendants acted, the courts had provided little or no guidance as to parameters for the proper application of section 6702.[10]

In light of ambiguities contained in section 6702 and the recency of that section's enactment, we must conclude that assessment of the penalty under section 6702 in the context of preexisting law was not clearly unlawful.

We narrowly hold that the defendants did not violate Todd's *clearly established* First or Fifth Amendment rights and are thus entitled to immunity from suit.

The judgment of the district court is REVERSED.

---

**9.** We note also that a sophisticated balancing of interests is generally required in deciding First Amendment claims of this nature. *See Bradley,* 817 F.2d at 1405; *cf. United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (balancing protester's interest in free expression against governmental interest in efficient administration of military selection process to resolve First Amendment challenge to prosecution for burning draft card). No court has resolved the question which Todd presented to the IRS agents for forecasting. In view of the jurisdictional constraints under which we now write, we reserve this question for another day.

Under the narrow grant of appellate jurisdiction conferred in *Mitchell,* we are constrained to consider only whether the defendants contravened clearly established law when they acted. *See Mitchell,* 472 U.S. at 528, 105 S.Ct. at 2816:

An appellate court reviewing the denial of the defendant's claim of immunity need not con-

sider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the established legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions....

Thus, we are precluded from "establishing law" in this case. Engaging in this analysis would exceed the scope of our jurisdiction under *Mitchell.*

**10.** More recently, courts have in fact approved section 6702 sanctions in situations very similar to this case. *See, e.g., Mosher v. IRS,* 775 F.2d 1292 (5th Cir.1985), *cert. denied,* 475 U.S. 1123, 106 S.Ct. 1645, 90 L.Ed.2d 189 (1986) (penalty properly assessed against individual who crossed out jurat and wrote "violates Amend. V, U.S. Constitution").