LORIN G. SLOAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15797–92.          Filed February 7, 1994.

*Grant E. Zellefrow*, for petitioner.
*Diane L. Worland*, for respondent.

RUWE, *Judge*: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows:

*Additions to tax*

| Year | Deficiency | Sec. 6653(b)(1) [1] | Sec. 6653(b)(2) | Sec. 6654 |
|------|-----------|---------------------|-----------------|-----------|
| 1981 | $9,389 | $4,694.50 | [1] | $613.40 |
| 1982 | 8,094 | 4,047.00 | 50 percent of the interest due on $8,094 | 788.C3 |
| 1983 | 11,450 | 5,725.00 | 50 percent of the interest due on $6,624.43 | 331.51 |

[1] Sec. 6653(b)(1) and (2) was first codified under sec. 325(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 616, and made applicable with respect to taxes the payment of which is due after Sept. 3, 1982 (without regard to any extension). Because taxes for the 1981 taxable year were due and payable on Apr. 15, 1982, sec. 6653(b)(1) and (2) is not applicable for that year. Rather, the applicable provision is sec. 6653(b), which (like sec. 6653(b)(1)) provides that if any portion of any underpayment of tax is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. We will treat the addition for 1981 here as if it had been determined under sec. 6653(b).

After concessions, the only issues remaining for decision are: (1) Whether petitioner is entitled to compute his tax using the rates for persons filing joint returns, and (2) whether this Court should impose a penalty on petitioner pursuant to section 6673 because these proceedings were instituted or maintained by petitioner primarily for delay, or because his position in this proceeding was frivolous or groundless.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of facts and attached exhibits are incorporated herein by this reference. Petitioner resided at Wabash, Indiana, at the time he filed the petition.

During each of the years in issue, petitioner was employed by the Fisher Body Division of General Motors in Marion, Indiana, and received wages in the following amounts:

| Year | Wage |
| --- | --- |
| 1981 | $30,318.66 |
| 1982 | 28,998.69 |
| 1983 | 38,935.84 |

Petitioner received Forms W–2, Wage and Tax Statement, from his employer for each of the years in issue but failed to timely file income tax returns for any of these years.

During the years in issue, petitioner was married and had three children. Respondent conceded that petitioner is entitled to dependency exemptions for his wife and three children.

Petitioner was indicted, tried, and, on September 24, 1990, convicted of income tax evasion pursuant to section 7201 for each of the years 1981, 1982, and 1983. His conviction was affirmed by the Court of Appeals for the Seventh Circuit on August 9, 1991.

Petitioner filed his petition on July 13, 1992. The positions taken in the petition can be described as those typically advocated by tax protesters. In addition to petitioner's failure to timely file returns during each of the years in issue, petitioner submitted false Forms W–4 to his employer so as to minimize or eliminate the withholding of tax from his wages. The opinion of the Court of Appeals for the Seventh Circuit in which petitioner's criminal conviction was affirmed, *United States v. Sloan*, 939 F.2d 499 (7th Cir. 1991), describes petitioner's activities and theories in detail, and we see no reason to repeat them here. Based on petitioner's criminal convictions, we previously granted respondent's motion for partial summary judgment and held that petitioner is liable for the section 6653(b) additions to tax for fraud for each year in issue.

Despite his criminal convictions, petitioner persisted in utilizing tax protester tactics in this case. These included arguments that wages are not taxable income, that respondent had no authority to issue the notice of deficiency, and that this Court lacked jurisdiction. Respondent filed an answer to the petition alleging specific facts in support of her

determination, including petitioner's prior criminal tax evasion conviction for each of the years in issue. Despite his criminal convictions, petitioner filed a reply with this Court denying the fact that he had been convicted of tax evasion for the years in issue. He also denied receiving wage income from Fisher Body during the years in issue and denied that he owed any tax for those years. Thereafter, petitioner's tactics with respect to discovery resulted in our granting a protective order relieving respondent from any requirement to respond to petitioner's discovery requests. Petitioner maintained his "tax protester" posture in the instant case up until the time this case was called for trial, at which time petitioner's current counsel first entered his appearance and at which time the issues were narrowed to those involving petitioner's filing status and the section 6673 penalty.

Prior to October 14, 1993, which was approximately 1 month prior to trial, petitioner had not filed any documents with the Internal Revenue Service that purported to be income tax returns for the years in issue. However, on October 14, 1993, Forms 1040 for each of the years in issue were submitted to the Problems Resolution Office of the Internal Revenue Service in Indianapolis, Indiana. The forms show petitioner and his wife as the taxpayers. These forms reflected petitioner's correct wage income from Fisher Body for each year. No other income items were reported. The box for designating "Filing Status" on the Forms 1040 is checked "Married filing joint return" on each return form.

The Forms 1040, which were submitted to the Internal Revenue Service on October 14, 1993, each contained the signatures of petitioner and his wife on the signature lines immediately following the preprinted form jurat. The jurat states:

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.[1]

---

[1] The preprinted jurat on the 1983 Form 1040 varies slightly from the 1981 and 1982 versions. It states that the signatories have "examined this return *and* accompanying schedules". (Emphasis added.) This variance is not significant for purposes of our analysis.

However, immediately following the preprinted jurat and immediately above the signatures of petitioner and his wife, the following statement was handwritten on each return: "Denial & Disclaimer attached as part of this Form." Attached to each of the three Forms 1040 that were submitted on October 14, 1993, was the following statement signed by petitioner and his wife:

DENIAL AND DISCLAIMER
OF LORIN G. SLOAN
FOR THE YEAR

I submit this "Denial and Disclaimer" as an attachment to the IRS Form 1040 for the year stated above.

I deny that I am liable or made liable for any "1040 income tax" for the above stated year. I claim all of my rights and waive none of them merely for exercising my right to work.

I submit the 1040 form to prevent the further theft of my property and loss of my liberty. My signature on the form is not an admission of jurisdiction or submission to subject status.

I "disclaim liability" for any tax shown on the form.

DENIAL AND DISCLAIMER
OF CAROL L. SLOAN
FOR THE YEAR

I deny that I am liable or made liable for any "1040 income tax" for the above stated year.

I sign my name to this form only to prevent the further theft of my husband's property. My signature on the form is not an admission of jurisdiction or submission to subject status.

I "disclaim liability" for any tax shown on the form.

The Forms 1040 that were submitted to the Internal Revenue Service on October 14, 1993, were not accepted by respondent as income tax returns.

OPINION

*Election of Joint Filing Status*

There is no dispute that the election of "Married filing joint return" filing status must be made on a "return". *Thompson v. Commissioner*, 78 T.C. 558, 561 (1982); *Casey v. Commissioner*, T.C. Memo. 1988–170, affd. 876 F.2d 899 (11th Cir. 1989); see sec. 1(a) (joint filing rates usable by "every married individual * * * who *makes a single return jointly* with his spouse under section 6013" (emphasis added)). Petitioner

argues that the Forms 1040 for the years 1981, 1982, and 1983 that were submitted to the Internal Revenue Service on October 14, 1993, constitute valid 1981, 1982, and 1983 income tax returns for petitioner and his wife, and that their election on these forms to be treated as "Married filing joint return" entitles petitioner to have his tax liability computed under section 1(a) using the tax rates applicable to a married individual who elects to make a joint return with his spouse under section 6013.[2]

Respondent takes the position that the Forms 1040 submitted on behalf of petitioner and his wife on October 14, 1993, were not valid income tax returns because of the "Denial and Disclaimer" that petitioner and his wife incorporated into the Forms 1040.[3] Thus, our first order of business is to decide whether the Forms 1040 submitted on petitioner's behalf constitute income tax returns.

Section 6001 states that "Every person liable for any tax imposed by this title * * * shall * * * make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe." A return must state the specific amounts of gross income, deductions, and credits claimed. *Thompson v. Commissioner, supra* at 562; *Sanders v. Commissioner*, 21 T.C. 1012, 1018 (1954), affd. 225 F.2d 629 (10th Cir. 1955). "In our self-reporting tax system the government should not be forced to accept as a return a document which plainly is not intended to give the required information." *United States v. Moore*, 627 F.2d 830, 835 (7th Cir. 1980); *McCaskill v. Commissioner*, 77 T.C. 689, 698–699 (1981). For example, "protest returns", on which taxpayers make blanket objections (under the guise of constitutional protections) without providing any of the required information, are generally not considered to be returns. *Thompson v. Commissioner, supra* at 562.

Section 6011(a) requires taxpayers to make returns "according to the forms and regulations prescribed by the

---

[2] Petitioner's wife is not a party to this proceeding.

[3] In her pretrial memorandum, respondent also argued that petitioner, who had not previously filed returns for 1981, 1982, and 1983, could not elect joint filing status after the notice of deficiency had been mailed. In her post-trial brief, respondent abandoned this position, citing Rev. Rul. 72–539, 1972–2 C.B. 634, as distinguished by Rev. Rul. 83–183, 1983–2 C.B. 220, and *Phillips v. Commissioner*, 86 T.C. 433 (1986), affd. on this issue 851 F.2d 1492 (D.C. Cir. 1988). In light of this concession, we do not consider *Durovic v. Commissioner*, 487 F.2d 36 (7th Cir. 1973), affg. in part, revg. in part and remanding 54 T.C. 1364 (1970).

Secretary." Section 6065 states that "any return * * * required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury." See also sec. 1.6065–1(a), Income Tax Regs. Section 6061 provides that returns "shall be signed in accordance with forms or regulations prescribed by the Secretary." To facilitate compliance with these requirements, the Form 1040 "prescribed by the Secretary" includes a standard preprinted jurat, which states:

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.[4]

Immediately under this clause is a place for a taxpayer and spouse to sign and date the return.

Where the taxpayer strikes or obliterates the jurat, the Form 1040, even if otherwise complete, accurate, and signed, does not constitute a return. *United States v. Moore, supra* at 834; *Cupp v. Commissioner*, 65 T.C. 68, 78–79 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1977). A tax return without the jurat "does not contain information on which the substantial correctness of the self-assessment may be judged". *Mosher v. Internal Revenue Service*, 775 F.2d 1292, 1294 (5th Cir. 1985) (per curiam); *Borgeson v. United States*, 757 F.2d 1071, 1073 (10th Cir. 1985) (per curiam). Likewise, alterations of portions of the jurat also invalidate an otherwise complete and accurate return. *Hettig v. United States*, 845 F.2d 794, 795 (8th Cir. 1988) (per curiam).

Tax protesters often add language under the jurat or signature such as "signed under duress", or "under protest". These amendments are usually accompanied by alterations of the jurat itself (such as stricken language) or the Form 1040 (often in the wording of its headings or prompts for information), or by entries that do not provide the required information. Courts have not accepted Forms 1040 with alterations and jurat amendments as valid returns. *Parkinson v. United States*, 614 F. Supp. 105, 107 (S.D. Ohio 1985), affd. without published opinion 802 F.2d 459 (6th Cir. 1986); see *Weller v.*

---

[4] See *supra* note 1.

*Commissioner*, T.C. Memo. 1985–387; *Counts v. Commissioner*, T.C. Memo. 1984–561, affd. 774 F.2d 426 (11th Cir. 1985).

Few cases deal with the validity of a Form 1040 as a return where the only questionable modification is an addition to the preprinted language of the jurat. In *Parkinson v. United States, supra,* the taxpayer had typed in the following language above and below the jurat:

"By filling out this form, and/or the attached forms, and/or by signing this form do I waver [sic] any of my rights under the Constitution of the United States of America." * * * [614 F. Supp. at 105.]

In *Parkinson,* there was also some question as to whether the jurat on the original Form 1040 had been stricken by the taxpayer when filed. However, the District Court stated that even if the taxpayer did not line out the jurat:

it is undisputed that plaintiff attempted to assert some qualification to his signature to the jurat by his addition of words around the jurat itself, *regardless of whether,* in addition, he lined out the entire jurat. * * *

Federal income tax liability is self-reported. A declaration under penalty of perjury is necessary to assure the correctness of the return information. *Any alteration of the jurat throws into question the correctness of the return information and impedes the administration of the federal income tax laws.*

[*Id.* at 107; emphasis added.]

The court concluded that the taxpayer had not filed a return "verified by a declaration under penalty of perjury." *Id.*[5]

In the bankruptcy case of *Schmitt v. United States,* 140 Bankr. 571, 572 (W.D. Okla. 1992), the debtor qualified the jurat on his Forms 1040 with the following added language: " 'SIGNED UNDER DURESS, SEE STATEMENT ATTACHED.' " The attached statement read:

"This return is signed under duress. I do not concede that my wages are taxable income under the law, however, I am acquiescing to the power of the State and I am filing this Return per the instructions of the I.R.S."

The bankruptcy judge held that the Forms 1040 did not constitute returns, stating:

---

[5] The Court of Appeals for the Sixth Circuit, in an unpublished order affirming the District Court, stated that "The affidavit supporting the government's motion for summary judgment shows that the jurat was also lined out, and the [taxpayer] has not effectively rebutted that showing." The Court of Appeals based its affirmance on the obliteration of the jurat.

Our income tax system is voluntary and the Internal Revenue Service must perforce rely on the self assessment of the taxpayer. The tax code therefore, includes §§ 6061 and 6065 which courts have interpreted to require execution of an unqualified jurat clause, the taxpayer's assurance that the figures supplied are true to the best of his or her knowledge, and numbers sufficient to compute a tax. See *Borgeson v. United States*, 757 F.2d 1071 (10th Cir. 1985); *United States v. Stillhammer*, 706 F.2d 1072 (10th Cir. 1983); *United States v. Porth*, 426 F.2d 519 (10th Cir. 1970); *Ted Kimball v. United States*, 925 F.2d 356 (9th Cir. 1991); *United States v. Moore*, 627 F.2d 830 (7th Cir. 1980).

Debtor's addition to the jurat clause, although seemingly innocuous, forces the Internal Revenue Service to evaluate the jurat, under the tests imposed in the circuit concerned, to determine if the jurat has been qualified and is, therefore, defective and invalid. I agree with the Court of Appeals for the Seventh Circuit that the Internal Revenue Service should not be required to undertake this analysis. *United States v. Moore*, 627 F.2d 830, 835 (7th Cir. 1980). Such an effort comes at the expense of all other taxpayers who file in good faith and who do not alter the jurat.

Bright line rules should be applied sparingly, but this situation requires just such a rule. I find that the jurat clause has been qualified if any addition or deletion is made to it.

[*Id.*]

Petitioner's qualification to the jurat is styled a "DENIAL AND DISCLAIMER". The "Denial and Disclaimer" statement raises serious questions about whether petitioner is "denying" the accuracy of the information contained in the return, "disclaiming" the jurat altogether, or simply protesting the tax laws. Petitioner's qualification is similar to those found in the quoted opinions. Like the qualifications found in those cases, it raises a significant question as to whether petitioner's signatures under the jurat were declarations that the Forms 1040 "contain information on which the substantial correctness of the self-assessment may be judged". *Mosher v. Internal Revenue Service*, 775 F.2d at 1294. The denial and disclaimer makes unclear whether petitioner had an "honest and reasonable intent to supply the information required by the tax code." *United States v. Moore*, 627 F.2d at 835. The implications of this uncertainty for the administration of the country's tax laws have been noted by several courts. In *United States v. Moore, supra* at 835, the Court of Appeals for the Seventh Circuit noted the problems caused in the criminal context:

The government should not have to guess whether it should take the position that a form is not a return and charge the taxpayer with failure

to file, or that the form is a return and charge him with filing a false return or tax evasion. * * *

We have noted previously that when a tampered form is submitted to respondent, it

adversely affects the form's useability by respondent. The tampered form * * * must be handled by special procedures and must be withdrawn from normal processing channels. There can be no doubt that due to its lack of conformity to the official form, it substantially impedes the Commissioner's physical task of handling and verifying tax returns. * * * [*Beard v. Commissioner*, 82 T.C. 766, 776–777 (1984), affd. 793 F.2d 139 (6th Cir. 1986).]

This reasoning applies to the situation at hand as well. Indeed, in *Beard*, we held that the taxpayer's return was not completed "*according to the forms and regulations* prescribed by the Secretary as required by section 6011(a)." *Id.* at 777. We concluded that the Commissioner was therefore not required to treat the Form as a return. *Id.*

Petitioner added language to the jurat which was certainly not "in accordance with" Form 1040 or the Secretary's regulations as provided by section 6061. Like the courts quoted above, we believe that the guessing games engendered by qualifications like petitioner's are an unreasonable impediment to the administration of the nation's tax laws.[6] As stated by the Supreme Court:

Congress has given discretion to the Commissioner to prescribe by regulation forms of returns and has made it the duty of the taxpayer to comply. It thus implements the system of self-assessment which is so largely the basis of our American scheme of income taxation. The purpose is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished. * * * [*Commissioner v. Lane-Wells Co.*, 321 U.S. 219, 223 (1944).]

---

[6] Some courts have indicated that a taxpayer may protest the tax laws while still complying with the statutory obligation to file a timely tax return and that the mere addition of the words "under protest" did not alter the meaning of an otherwise unaltered jurat. See *McCormick v. Peterson*, 73 AFTR 2d 597, 94-1 USTC par. 50,026 (E.D.N.Y. 1993); *Todd v. United States*, 849 F.2d 365, 367 (9th Cir. 1988) (Government conceding that return not frivolous or inaccurate where taxpayer stated below jurat that she "'signed involuntarily under penalty of statutory punishment'"). Such language is distinguishable from that in the instant case and does not give rise to the same uncertainty engendered by the denial and disclaimer used by petitioner and his wife.

We therefore hold that petitioner's Forms 1040 do not qualify as returns. It follows that petitioner did not elect joint filing status under section 6013.

Even if we were to find that petitioner's qualification did not affect the validity of the purported returns, petitioner would still not be entitled to the benefits of joint filing status. As described above, both petitioner and his wife, Carol L. Sloan, appended separate denial and disclaimer statements to the submitted Forms 1040. Both state: "My signature on the form is not an admission of jurisdiction or *submission to subject status.*" (Emphasis added.) By these statements, it appears that both petitioner and Mrs. Sloan are disclaiming any "status" that might otherwise be inferred from the Form 1040. While a checkmark was placed in the box for designating "Married filing joint return" "Filing Status" on the Forms 1040, the concurrent disclaimers regarding status raise substantial questions about whether petitioner and his wife were electing the benefits and burdens of joint filing status.

If we were to determine that petitioner's tax liability should be computed on a joint basis, it would follow that Mrs. Sloan should also be jointly and severally liable for the tax due on petitioner's income. However, Mrs. Sloan stated in her disclaimers attached to the Forms 1040 that "I 'disclaim liability' for any tax shown on the form." She also stated that her signature was not intended to be "an admission of jurisdiction or submission to subject status." Mrs. Sloan's only connection to the income and tax liability reported on the returns would be based on her purported election of joint filing status. Her disclaimer, however, denies that her signature on the returns was intended to result in any status that would make her liable. Mrs. Sloan is not a party to this proceeding. It is easy to envision a future scenario wherein Mrs. Sloan might argue that since she was not the earner of any of the income reported on the Form 1040 and because she disclaimed any "status" that would make her liable for any of the tax shown, she has not elected joint return status and is not jointly and severally liable for such tax. Based on the facts in this case, we find that there was no valid election of joint filing status.

*Section 6673 Penalty*

Section 6673(a)(1) provides:

SEC. 6673(a). TAX COURT PROCEEDINGS.—

(1) PROCEDURES INSTITUTED PRIMARILY FOR DELAY, ETC.—Whenever it appears to the Tax Court that—

(A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay,

(B) the taxpayer's position in such proceeding is frivolous or groundless, or

(C) the taxpayer unreasonably failed to pursue available administrative remedies,

the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $25,000.

The facts in this case amply demonstrate that petitioner maintained frivolous and groundless positions from the time he filed his petition until the time of trial when his attorney first entered his appearance and narrowed the contested issues to whether petitioner was entitled to joint filing status, and whether the Court should impose a penalty under section 6673. Despite the fact that we do not consider these two issues to be frivolous or groundless, petitioner's primary stance for the 14 months that this case was pending prior to trial was clearly frivolous and groundless and caused a considerable expenditure of time and effort by respondent and this Court. The mere fact that not every one of petitioner's arguments is frivolous or groundless does not eliminate the applicability of section 6673. *Granado v. Commissioner*, 792 F.2d 91, 94 (7th Cir. 1986), affg. T.C. Memo. 1985–237.

When petitioner filed his petition, it was abundantly clear that his tax protester arguments would be rejected as they had already been rejected in his criminal tax evasion prosecution. Yet, he persisted. The Court of Appeals for the Seventh Circuit foresaw petitioner's future course of action when it observed:

It may be that our decision will not alter Mr. Sloan's views regarding the tax laws of this country, for he has stated that if we affirm his conviction without applying the law as he understands it, our decision will be "a sham to which I WILL NOT SUBMIT." It may also be that serving his sentence in prison will not alter Mr. Sloan's view. We hope this pessimistic assessment is incorrect. [*United States v. Sloan*, 939 F.2d 499, 503 (7th Cir. 1991).]

We believe that the requirements of section 6673 have been met and that a penalty is appropriate. In determining the amount of the penalty, we think it appropriate to consider the fact that after petitioner retained counsel, he refrained from making any further tax protester arguments. Taking into consideration the substantial tax and fraud additions for which petitioner will already be liable, and in the hope that in the future petitioner will act in conformity with the tax laws and cease relying on frivolous and groundless positions, we will limit imposition of the section 6673 penalty in this case to the amount of $2,500. In doing so, we note that petitioner is presently before this Court in a case involving subsequent years. Should our hope for petitioner's future conformity with the law prove unfounded, there will be another occasion to consider imposition of the section 6673 penalty.

*Decision will be entered under Rule 155.*

