MARK D. LEBOW AND CATHERINE LEBOW, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lebow v. Commissioner
Docket No. 33936-87
United States Tax Court
T.C. Memo 1995-333; 1995 Tax Ct. Memo LEXIS 334; 70 T.C.M. (CCH) 155; July 25, 1995, Filed *334 Decision will be entered in accordance with respondent's computations. Emilio A. Dominianni, for petitioners. Mary Ann Amodeo, for respondent. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 31,029.52 in petitioners' Federal income taxes for 1981 and an addition to tax of $ 6,057.30 under section 6659. The issue for decision is whether petitioner Mark D. Lebow (petitioner) is entitled to deduct in 1981 the sum of $ 10,000 invested in Peat Oil & Gas Associates (POGA) during that year. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. The stipulation also incorporates the findings of fact in Smith v. Commissioner, 91 T.C. 733 (1988), and Peat Oil & Gas Associates v. Commissioner, 100 T.C. 271 (1993). (The appellate history of these cases is cited below, but the stipulation incorporates *335 only our Opinions.) Petitioners resided in New York, New York, at the time that their petition was filed. Petitioner graduated from Harvard Law School in 1965. He began working for Coudert Brothers, a New York law firm, that year. In 1972, he became a partner in the firm. Petitioner is an experienced litigator and sophisticated investor, although not a tax specialist. In 1981, he served as chairman of the New York City Civil Service Commission in addition to practicing law. Prior to 1981, he had invested in various oil and gas ventures. Petitioner was introduced to POGA by one of his partners at Coudert Brothers. In 1981, petitioner acquired a one-unit interest as a limited partner in POGA. Petitioner's actual cash investment in 1981 was $ 10,000. POGA engaged in synthetic fuel activities, known as the "Koppelman Process Activity", and in the drilling of oil and gas wells. POGA first generated income from its oil and gas drilling activities in 1982. On their joint Federal income tax return for 1981, Form 1040, petitioners deducted $ 40,382 as their distributive share of losses from POGA and $ 21,800 as their share of losses from a partnership known as M.W.F. Energy Limited (MWF). *336 Petitioners' return for 1981 was filed on or after June 15, 1982. On November 30, 1984, petitioners executed a Form 872-A, Special Consent to Extend the Time to Assess Tax, for the period ended December 31, 1981, in which they agreed that the time for assessing deficiencies relating to adjustments to petitioners' distributive share of partnership items or other partnership adjustments could be made on or before the 90th day after the IRS received a Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from petitioners, or the IRS mailed a Form 872-T to petitioners or mailed a notice of deficiency to petitioners. Shortly after he invested $ 10,000 in POGA, petitioner concluded that POGA was poorly managed and that the excessive fees paid to the promoters would preclude development of the Koppelman Process Activity to a profit-making activity. As early as February 1982, petitioner was unable to reach anyone at POGA who had authority to talk to him. He received Forms K-1 from POGA for 1981, 1982, 1983, and 1984 and deducted losses shown on them for those years. Petitioner deducted the amounts shown on the Forms K-1, although in his own words: I *337 knew at this time that * * * [POGA] was not being operated in the way that it ought to be. I did not know perhaps the full extent of how they had messed it up from the beginning, but I knew that it was not being operated in the way that it should be operated. That became clear immediately. * * * A I received a K-1 in 1985, actually. It had another pass-through partnership distributive loss. By that time, I was so disgusted with the way * * * [POGA] was operating that I didn't -- I think I tore up and threw away the K-1 and did not claim it. * * * I said I didn't have any confidence in any data received on account of * * * [POGA] anymore.
The POGA Koppelman Process Activity was worthless in 1981. The synthetic fuel activities of POGA lacked economic substance, and POGA did not engage in those activities for the purpose of, or with an actual and honest objective of, making a profit. Petitioners were not entitled to deduct their claimed distributive share of losses from POGA in the amount of $ 40,382 in 1981. Petitioner and other limited partners in POGA were offered a cash out-of-pocket settlement by the Internal Revenue Service (IRS). Petitioner was offered a cash out-of-pocket *338 settlement prior to the issuance of the statutory notice of deficiency for 1981. While some limited partners accepted the offer, petitioner did not accept the offer. On July 16, 1987, the notice of deficiency for 1981 was sent to petitioners. The amounts deducted with reference to POGA and MWF were disallowed. It was determined that the amount claimed with respect to POGA was not allowable because it was not established that the loss was incurred in connection with an activity entered into for profit or in connection with a trade or business or in connection with property held for the production of income, and it was further determined that the investment in POGA was lacking in economic substance other than the avoidance of tax. Similar determinations were made with respect to MWF. In the petition filed October 16, 1987, petitioners disputed respondent's determinations. Petitioners alleged, among other things: 5. (b) In 1981, petitioner Mark D. Lebow acquired a one unit interest as a limited partner in * * * [POGA] at a cost of $ 161,500, which was payable $ 10,000 upon subscription, $ 27,500 by a fully recourse interest-bearing note payable in installments of $ 10,000 on March *339 1, 1982, $ 10,000 on March 1, 1983 and $ 7,500 on March 1, 1984 and $ 124,000 by a fully recourse interest-bearing note payable in installments of $ 24,000 on March 1, 1993, $ 30,000 on March 1, 1994, $ 30,000 on March 1, 1995, $ 30,000 on March 1, 1996 and $ 10,000 on March 1, 2007.
The petition described POGA's organization, stated business purpose, and contractual arrangements and alleged: (o) During 1981, * * * [POGA] entered into a management and consulting agreement (the "Management Agreement") with Chronometer Management & Consultants, Inc. ("Consultants"), a company unaffiliated with * * * [POGA] or petitioners. (p) Pursuant to the Management Agreement, Consultants agreed to provide management and financial consulting services to * * * [POGA] in return for the payment of a management fee. (q) The management fee payable to Consultants for 1981 was paid in cash. (r) The management fee payable to Consultants for 1981 was an ordinary and necessary business expense of * * * [POGA] and was reasonable in amount. (s) Pursuant to an assumption agreement, each limited partner, including petitioner Mark D. Lebow, agreed to assume personal liability to Sci-Teck and R&D with *340 respect to the notes issued to each, respectively, by * * * [POGA] to a maximum aggregate amount equal to such limited partner's recourse subscription obligations due between March 1, 1993 and March 1, 2007. (t) The partner's notes issued by each limited partner were pledged to Sci-Teck and R&D to secure payment of the notes issued to each by * * * [POGA]. (u) During 1981 and thereafter, * * * [POGA] incurred various other expenses in the ordinary course of its business. (v) * * * [POGA] sustained a net operating loss for taxable year 1981. (w) Petitioners properly deducted their distributive share of the loss from * * * [POGA] on their 1981 Federal income tax return.
The petition also alleged that the statutory notice was invalid (because the signature was stamped and not initialed) and that there was no valid extension of time to assess for the year in issue. The opinion in Smith v. Commissioner, 91 T.C. 733 (1988), was filed October 3, 1988. Petitioner read the opinion and agreed with the Court's conclusion that the Koppelman Process Activity lacked economic substance. Petitioner, however, did nothing to amend his petition in the within *341 proceedings. After the decision in Smith was published, the IRS ceased agreeing to cash out-of-pocket settlements with taxpayers. In 1991, our opinion in Smith was affirmed by the Court of Appeals for the Eleventh Circuit in Karr v. Commissioner, 924 F.2d 1018 (11th Cir. 1991), and was reversed by the Court of the Appeals for the Sixth Circuit in Smith v. Commissioner, 937 F.2d 1089 (6th Cir. 1991). The deductibility of losses from POGA for 1983 through 1987 was submitted to the Court and decided in Peat Oil & Gas Associates v. Commissioner, 100 T.C. 271 (1993). On July 13, 1994, the Court of Appeals for the Second Circuit, to which this case is appealable, affirmed the opinion at 100 T.C. 271 (1993) in Ferguson v. Commissioner, 29 F.3d 98 (2d Cir. 1994). On October 24, 1994, the Court issued an Order to Show Cause in all remaining POGA cases. The Court ordered that the parties submit either computations for decision or trial memoranda. Respondent submitted a report to the Court, attaching a copy of a closing agreement executed *342 by petitioners in 1987 with respect to the MWF partnership and computations and a proposed decision, reflecting the Court's resolution of the POGA issues. Petitioners submitted a trial memorandum in which they contended, for the first time before the Court, that they are entitled to deduct their cash investment of $ 10,000 in 1981 as a section 165 loss in that year. OPINION Petitioner contends that the investment made by him was worthless when made in 1981. He contends that, therefore, his cash investment is deductible under section 165. Section 165(a) provides for a deduction of "any loss sustained during the taxable year and not compensated for by insurance or otherwise". Section 165(c) limits losses deductible by individuals (1) to losses incurred in a trade or business, (2) in any transaction entered into for profit, or (3) to losses arising from casualties or theft. After the case was set for trial, respondent filed a Motion for Summary Judgment. Petitioners opposed the motion, asserting that, "since Petitioners claim a deduction only under I.R.C. sec. 165(a) as limited by sec. 165(c)(2), it is futile and a waste of everyone's time for Respondent to erect 'straw deduction *343 theories' only to knock them down with pages of argument." Thus, we deal only with petitioners' stated grounds for their claim. Section 1.165-1(d)(1), Income Tax Regs., provides in part: (1) A loss shall be allowed as a deduction under section 165(a) only for the taxable year in which the loss is sustained. For this purpose, a loss shall be sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year. * * *
Petitioners obviously have failed to satisfy this basic requirement of a deductible loss for 1981. They do not seriously argue that they have satisfied this requirement for 1981. Their counsel stated at trial that "It's the only year that you can attach it to conveniently now. It had to have been lost sometime." He argues: All of the money was lost in the partnership. The loss of all that money, including the oil and gas activity money, meant that the partnership was worthless. Not known to this taxpayer in 1981, but that was the fact. The worthlessness occurred when he gave his money to people who were going to get involved in a whole series of royalty *344 payments and intricate dealings with themselves, where there was no possibility of success, as * * * [the Court] has found, by virtue of the setup and the activities themselves. The fact that oil prices did not go up was a final coffin nail in the entire operation. But the operation, as conducted by those partners, those general partners, are [sic] the thing that sealed the doom for this taxpayer. He lost his money when he gave it to them in 1981 because they knew that they were going to operate the way they did and there was nothing in the future that was going to redeem that investment. * * * to say that the oil and gas activity persisted and may, as being suggested, no evidence to prove that, but that maybe those wells are still in existence today, as far as this witness knows and as far as the credible evidence that's before this Court is concerned, is Peat Oil & Gas is gone.
Petitioner, of course, has the burden of proof. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). There is no evidence in this record that POGA "is gone". The only evidence is that petitioner was unable to secure information or distributions from the *345 partnerships. He ceased any attempt to do so, apparently, in 1985, 2 years before he filed his petition in this case. He now asks us to accept his subjective belief, bolstered by our 1988 opinion, as proof of worthlessness in 1981. Meanwhile, the Court of Appeals for the Sixth Circuit and other partners believe that, at least in 1981 and 1982, POGA had sufficient substance to support tax deductions. See Smith v. Commissioner, 937 F.2d at 1096; Estate of Kettleberg v. Commissioner, T.C. Memo. 1995-331, filed this date. The oil and gas activities of the partnership were, at all material times, recognized by respondent and were the basis for allowed deductions. Peat Oil & Gas Associates v. Commissioner, 100 T.C. at 272; Smith v. Commissioner, 91 T.C. at 753; Peat Oil & Gas Associates, T.C. Memo. 1993-130. The promotional memoranda of POGA represented that notes relating to the Koppelman Process Activity would be paid by revenue from gas and oil well drilling operations. Smith v. Commissioner, 91 T.C. at 743. *346 We cannot conclude that petitioner's interest in the partnership was worthless in 1981. Petitioner contends that he is being "sandbagged" by respondent's refusal, in November and December 1994, to extend to him a settlement whereby he would be allowed to deduct his out-of-pocket cash in 1981. He testified that he wanted to settle this issue all along and would have done so when he settled the MWF issue if he had received a settlement offer from respondent at that time. Therefore, he concludes -- contrary to the stipulation -- that he did not receive an offer from respondent to settle the POGA issues. Because he concludes that he did not receive an offer from respondent, he asserts that respondent has unfairly discriminated against him. Petitioners contend that they have been denied equal treatment with other taxpayers similarly situated. In our view, however, the taxpayers with whom petitioners are similarly situated are those taxpayers who sought a settlement or an out-of-pocket deduction after it became apparent that they would lose on their greater claims, i.e., that they were entitled to deduct a multiple of their cash investment. See, e.g., Chao v. Commissioner, 92 T.C. 1141, 1144 (1989); *347 Marine v. Commissioner, 92 T.C. 958, 980 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991); Viehweg v. Commissioner, 90 T.C. 1248 (1988); Wolverine, Ltd. v. Commissioner, T.C. Memo. 1992-669, affd. without published opinion 39 F.3d 1190 (9th Cir. 1994); Adelberg v. Commissioner, T.C. Memo. 1985-597, affd. without published opinion 811 F.2d 1507 (9th Cir. 1987). In each of these cases, a taxpayer purchased a ticket in the audit lottery, claimed deductions to which he knew he was not entitled, and continued to claim them hoping to get a settlement. His $ 10,000 thus bought him what he paid for. Petitioner's present claim that he lost $ 10,000, and in "equity" should be allowed to deduct it for 1981, has no merit. The Court advised petitioner at trial that a penalty under section 6673 was being considered in this case. Section 6673(a) provides: (a) Tax Court Proceedings. -- (1) Procedures instituted primarily for delay, etc. -- Whenever it appears to the Tax *348 Court that -- (A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay, (B) the taxpayer's position in such proceeding is frivolous or groundless, * * *
* * * the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $ 25,000.
Rule 33(b), with respect to signing of pleadings in this Court, provides: (b) Effect of Signature: The signature of counsel or a party constitutes a certificate by the signer that the signer has read the pleading, that, to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. * * * If a pleading is signed in violation of this Rule, the Court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay *349 to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable counsel's fees.
Rule 3.1, Model Rules of Professional Conduct, provides in part: A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. * * *
Petitioner and his counsel both have extensive litigation experience. They claim that petitioner knew, in 1985, that POGA was not what it was represented to be, and, in 1988, he agreed with our rejection of the deductions related to POGA. Yet, from 1987 through 1994, they maintained in this proceeding positions inconsistent with petitioner's current testimony as to his knowledge in 1985. They made a frivolous claim that the statute of limitations barred assessment. They did not have a good faith belief in the validity of the claims. They continued to maintain these positions until November or December 1994, after the Court of Appeals for the Second Circuit had issued its opinion in Ferguson v. Commissioner, 29 F.3d 98 (2d Cir. 1994), *350 affg. Peat Oil & Gas Associates v. Commissioner, 100 T.C. 271 (1993). They then switched course and demanded a settlement. Their current claim is unsupported in law and contrary to numerous authorities. Taxpayers far less equipped to make judgments in these matters have been assessed penalties. See Sloan v. Commissioner, 102 T.C. 137, 148-149 (1994), affd. 53 F.3d 799 (7th Cir. 1995); Chao v. Commissioner, supra; Horn v. Commissioner, 90 T.C. 908, 945-947 (1988); Bell v. Commissioner, 85 T.C. 436, 443-445 (1985); Oneal v. Commissioner, 84 T.C. 1235 (1985); Mandelbaum v. Commissioner, T.C. Memo. 1990-223; cf. Harper v. Commissioner, 99 T.C. 533, 553 (1992). In our view, it would be unconscionable to give petitioner a free ride. We award to the United States a penalty in the amount of $ 5,000, on the grounds set forth in section 6673(a)(1)(A) and (B). Decision will be entered in accordance with respondent's *351 computations.