T.C. Memo. 1996-494


UNITED STATES TAX COURT


NELLWYN A. BUCK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11766-95.                    Filed November 4, 1996.


<u>Jeffrey A. Dickstein</u>, for petitioner.

<u>Michael J. O'Brien</u>, for respondent.


MEMORANDUM OPINION

ARMEN, <u>Special Trial Judge</u>:  This case is before the Court

on petitioner's motion to recover administrative and litigation

costs[1] pursuant to section 7430 and Rule 231.[2]

_____

[1] Although petitioner's motion is styled "Motion for
Litigation Costs", we are satisfied that petitioner intended to
move for an award of administrative costs as well as litigation
costs.

[2] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the taxable year in
issue; however, all references to sec. 7430 are to the Internal
Revenue Code in effect at the time that the petition was filed.

We decide the matter before us based on the pleadings, petitioner's motion, respondent's response to petitioner's motion, petitioner's reply to respondent's response, and respondent's response to petitioner's reply, as well as the various exhibits attached thereto.

Background

Petitioner Nellwyn A. Buck (petitioner) resided in Texas City, Texas, at the time that the petition was filed with the Court.

At all relevant times, petitioner was married to, and resided with, Pittman A. Buck, Jr. (Mr. Buck).

Petitioner and Mr. Buck prepared a document purporting to be a joint Federal income tax return for the taxable year 1988 (the purported return). Petitioner and Mr. Buck mailed the purported return to respondent on April 17, 1989, and respondent received it 2 days later on April 19, 1989.

The purported return was not signed by either petitioner or Mr. Buck. Rather, the purported return contained the statement "Fifth Amendment" in the spaces provided for petitioner's and Mr. Buck's signatures.[3]

---

All Rule references are to the Tax Court Rules of Practice and Procedure.

[3] An asterisk placed opposite each of the "Fifth Amendment" statements served to reference certain documents attached to the purported return. One such document, in the form of a "legal opinion", expressed the view that "liability for filing returns and paying income tax with respect to federal individual income taxes applies only to third parties who have withheld taxes for

(continued...)

Line 53 of the purported return reported "total tax" in the amount of $24,939.21. Line 61 of the purported return claimed "total payments" in the amount of $15,470.11, consisting of withheld tax in the amount of $9,470.11 and estimated tax payments in the amount of $6,000. Line 65 of the purported return reported a balance due in the amount of $9,469.10 (i.e., $24,939.21 less $15,470.11). A check for such amount was enclosed with the purported return and was apparently negotiated by respondent.

Respondent did not process the purported return as a return. Rather, respondent assessed a frivolous return penalty pursuant to section 6702.[4]

On November 10, 1994, respondent issued a 30-day letter to petitioner with respect to petitioner's 1988 taxable year. On December 5, 1994, petitioner mailed a letter to respondent protesting the adjustments proposed in the 30-day letter and requesting administrative review. In her letter dated December

---

[3](...continued)
another." Another such document, in the form of a letter signed by Mr. Buck, stated that "By invoking the Fifth Amendment at the jurat location we specifically intend to exercise our rights under the First, Fourth and Fifth Amendments to the Constitution".

[4] Petitioner and Mr. Buck unsuccessfully challenged the assessment of the frivolous return penalty by first filing an administrative claim for refund and thereafter an action in District Court. See sec. 6703. Their appeal to the Court of Appeals for the Fifth Circuit was equally unsuccessful.

5, 1994, petitioner informed respondent that she had already paid her taxes for the taxable year 1988.

By notice of deficiency dated April 14, 1995, respondent determined a deficiency in petitioner's income tax in the amount of $22,779.  Respondent also determined that petitioner was liable for additions to tax under sections 6651(a) and 6654(a) in the amounts of $3,327.25 and $783.20, respectively.

On or about June 12, 1995, petitioner and Mr. Buck submitted a joint Federal income tax return for the taxable year 1988, which respondent processed as a return (the filed return).  The filed return was virtually identical to the purported return, except that petitioner and Mr. Buck signed the filed return, under penalties of perjury, in the spaces provided for their signatures.[5]

---

[5] The filed return also differed from the purported return in terms of the extraneous material attached thereto.  Thus, in lieu of the "legal opinion" and the letter signed by Mr. Buck, a lengthy affidavit signed by petitioner and Mr. Buck and a newspaper article concerning petitioner and Mr. Buck were attached to the filed return.  The affidavit, which was entitled "Affidavit Concerning The Affiants' Coerced Signing Of The Attached IRS 1988 Form 1040", concluded as follows:

Plainly, our consciences can**not** be awakened and appealed to when we are <u>compelled</u> to sign a <u>prescribed</u> document or jurat <u>premised</u> upon <u>political</u> dogma that we do **not** believe and may **not** be required to believe.  As individuals acting in our <u>personal</u> capacities and **believing** that wages and earned pensions are **not** income, profit or gain, we can**not** fill in lines 7 [regarding wages] and 17a [regarding pensions and annuities] of Form 1040 and **will**fully sign its jurat without committing

(continued...)

In the top right corner of the first page of the filed return, Mr. Buck's Social Security number was entered in the space entitled "Your social security number". Petitioner's social security number was entered immediately below Mr. Buck's in the space provided for "Spouse's social security number".

On June 30, 1995, petitioner filed a petition for redetermination (the petition) in respect of the notice of deficiency dated April 14, 1995. On that same day, petitioner designated Oklahoma City, Oklahoma, as the place of trial of this case.[6]

The petition contains an allegation that the purported return was "accepted" by respondent "for all purposes". The petition contains a further allegation that assessment of any deficiency against petitioner for the taxable year 1988 is barred by the 3-year statute of limitations under section 6501(a).

Respondent filed an answer (the answer) to the petition on August 30, 1995. The answer contains affirmative allegations regarding the statute of limitations on assessment. Thus, the answer alleges that the purported return was not a valid return

---

[5](...continued)
perjury. Hence, the coercing of our signatures to the **un**believed Form 1040 is **not** meaningful but illicit and renders them **null** and **void**. It is nature's law that each person must live with his or her own conscience, in peace or in conflict. We choose to live in peace with ours. [Emphasis in the original.]

[6] Although petitioner resided in Texas City, Texas, at the time that the petition was filed, petitioner's counsel maintains his office in Tulsa, Oklahoma.

and that, as a consequence, the statute of limitations does not bar the assessment of any deficiency against petitioner for 1988.

The answer was prepared by an attorney in respondent's District Counsel office in Houston, Texas.[7] The attorney attempted to locate the filed return, which was mentioned in the petition. However, by the time the answer was due, the filed return could not be obtained, and it was therefore not available to respondent's attorney in preparing the answer.

On September 14, 1995, respondent transferred petitioner's case to respondent's District Counsel office in Oklahoma City, Oklahoma, for trial preparation. As previously indicated, Oklahoma City had been designated by petitioner as the place of trial of this case.

On October 10, 1995, respondent's counsel in the Oklahoma City District Counsel office (respondent's counsel) discussed this case with petitioner's counsel and immediately thereafter contacted the IRS Service Center in Austin, Texas (the Austin Service Center) in order to obtain the filed return. Respondent's counsel learned that the filed return was located under Mr. Buck's account, apparently because Mr. Buck's taxpayer

---

[7] As previously mentioned, petitioner resided in Texas City, Texas, at the time that the petition was filed. Texas City is located about 40 miles southeast of Houston, not far from Galveston.

identification number (TIN) was the "primary TIN" and petitioner's TIN was the "spousal TIN."[8]

Respondent's counsel received the filed return from the Austin Service Center in late October 1995.  After reviewing the filed return, respondent's counsel ordered transcripts of account in order to verify the correctness of the information contained in the filed return.

On November 22, 1995, petitioner filed a reply (the reply) to the affirmative allegations pleaded in the answer.  The reply concludes by alleging that the purported return "was 'accepted' for all purposes in accordance with governing case law, and is deemed to be a return for the purpose of the running of the statute of limitations".

Upon receiving the transcripts of account in respect of the filed return in January 1996, respondent's counsel conceded that petitioner had paid her tax liability for 1988 and apparently also conceded that petitioner was not liable for the addition to tax under section 6654(a).  In contrast, respondent's counsel continued to pursue the addition to tax under section 6651(a).  However, on March 1, 1996, respondent's counsel conceded such addition.

---

[8] See <u>Abeles v. Commissioner</u>, 91 T.C. 1019, 1023 (1988), for a discussion concerning the significance of these terms.

No later than March 5, 1996, respondent's counsel mailed an agreed form of decision (the form of decision) to petitioner's counsel for his signature.

On March 29, 1996, the Court entered a decision in this case (the decision) utilizing the form of decision furnished by the parties. The decision reflected the parties' agreement that petitioner's income tax liability for 1988 is as follows:

Deficiency (without taking into consideration
  the assessment subsequent to the mailing of
  notice of deficiency on April 14, 1995)     $24,939.21

Tax paid           24,939.21

*   *   *   *   *   *   *

Deficiency (to be paid)         NONE

The decision also reflected the parties' agreement that petitioner was not liable for any addition to tax under either section 6651(a) or section 6654(a).

The amount of the deficiency reflected in the decision (without taking into consideration the assessment subsequent to the mailing of notice of deficiency on April 14, 1995) was equal to the tax reported on the filed return.

On April 24, 1996, petitioner filed her motion for costs. Thereupon, the Court vacated the decision and filed the form of decision as a stipulation of settlement. See Rule 232(f).

Discussion

Section 7430(a) provides that the prevailing party may be awarded a judgment for (1) reasonable administrative costs incurred in connection with an administrative proceeding within the Internal Revenue Service, and (2) reasonable litigation costs incurred in connection with a court proceeding. Congress enacted section 7430 in the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 292(a), 96 Stat. 572, and, as relevant to the present case, amended it by the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, sec. 6239(a), 102 Stat. 3342, 3743-3747, applicable to proceedings commenced after November 10, 1988.[9] Because both the administrative proceeding and the court proceeding in this case were commenced after November 10, 1988, and before July 31, 1996, we apply section 7430 as amended by TAMRA.

A judgment for costs may only be awarded under section 7430(a) if a taxpayer (1) is the "prevailing party", (2) where the taxpayer seeks litigation costs, has exhausted the administrative remedies available to the taxpayer within the Internal Revenue Service, and (3) does not unreasonably protract the proceedings. Sec. 7430(a), (b)(1), (4).

---

[9] Sec. 7430 was amended most recently by the Taxpayer Bill of Rights 2, Pub. L. 104-168, secs. 701-704, 110 Stat. 1452, 1463-1464, applicable to proceedings commenced after July 30, 1996.

In order to qualify as the "prevailing party", a taxpayer must establish that: (1) The position of the United States in the proceeding was not substantially justified; (2) the taxpayer has substantially prevailed with respect to the amount in controversy or the most significant issue or set of issues presented; and (3) the taxpayer satisfies the applicable net worth requirements. Sec. 7430(c)(4)(A). We understand respondent to concede that petitioner has satisfied the applicable net worth requirements and that petitioner has not unreasonably protracted the judicial proceeding.

Finally, if a taxpayer qualifies as the prevailing party, only administrative and litigation costs that are reasonable may be awarded. Sec. 7430(a), (c)(1) and (2).

We begin with whether respondent's position was substantially justified. Petitioner bears the burden of proving that respondent's position was not substantially justified. Rule 232(e); Dixson Corp. v. Commissioner, 94 T.C. 708, 714-715 (1990); Ganter v. Commissioner, 92 T.C. 192, 197 (1989), affd. 905 F.2d 241 (8th Cir. 1990).

As originally enacted, section 7430 required that a taxpayer establish that the position of the United States was unreasonable. In 1986, Congress adopted the standard applicable to the Equal Access to Justice Act (EAJA), 28 U.S.C. sec. 2412 (1988), by changing "unreasonable" to "not substantially justified". Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551,

100 Stat. 2752; see H. Conf. Rept. 99-841, at II-801 (1986), 1986-3 C.B. (Vol. 4) 1, 801.  The purpose of the amendment was to conform section 7430 more closely to EAJA.  H. Rept. 99-841, supra at II-801, 1986-3 C.B. (Vol. 4) 801.  We have consistently held that the "substantially justified" standard is not a departure from the "reasonableness" standard.  E.g., Sokol v. Commissioner, 92 T.C. 760, 763 n.7 (1989); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988).

A position is "substantially justified" if the position is "justified to a degree that could satisfy a reasonable person".  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (construing similar language in EAJA).  A position that merely possesses enough merit to avoid sanctions for frivolousness will not satisfy this standard; rather, the position must have a "reasonable basis both in law and fact".  Id.

As relevant herein, the position of the United States that must be examined against the substantial justification standard with respect to the administrative proceeding is the position taken by the Commissioner as of the date of the notice of deficiency.  Sec. 7430(c)(7)(B).  The position of the United States that must be examined against the substantial justification standard with respect to the judicial proceeding is the position taken by the Commissioner in her answer to the petition.  Bertolino v. Commissioner, 930 F.2d 759, 761 (9th Cir. 1991), affg. an unpublished decision of this Court; Sher v.

Commissioner, 861 F.2d 131, 134-35 (5th Cir. 1988), affg. 89 T.C. 79 (1987).

In deciding whether the Commissioner's position was substantially justified, the Court will consider not only the basis of the Commissioner's legal position, but also the manner in which the Commissioner maintained that position. Wasie v. Commissioner, 86 T.C. 962, 969 (1986). In assessing the Commissioner's position in each of the proceedings, we may consider, inter alia, whether the Commissioner used the costs and expenses of litigation to extract unjustified concessions from the taxpayer, whether the Commissioner pursued litigation to harass or embarrass the taxpayer, or whether the Commissioner's pursuit of the litigation was politically motivated. Rutana v. Commissioner, 88 T.C. 1329, 1333 (1987); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985).

In the present case, respondent's position, both at the time she issued the notice of deficiency and at the time she filed the answer, was that petitioner was liable for a deficiency in income tax and additions to tax for 1988. It is respondent's agreement that petitioner paid her total income tax liability for 1988 in April 1989 that forms the basis of petitioner's claim for administrative and litigation costs. In other words, petitioner posits that she is a prevailing party within the meaning of section 7430 on the ground that respondent's position was not substantially justified, either at the time the notice of

deficiency was issued or the answer was filed, because, at both times, petitioner had already paid her tax liability for 1988.

In contrast, respondent maintains that her position was substantially justified throughout the administrative and judicial proceedings.  Respondent contends that petitioner was liable for income tax for 1988 and that respondent was forced to issue a notice of deficiency in order to assess such liability because petitioner did not file a valid return.  Respondent also contends that the 6-month period between the time that the answer was filed and the time that respondent agreed to settle the entire case was a reasonable period of time for respondent to locate the return filed by petitioner and Mr. Buck on June 12, 1995, and to verify the information set forth on such return.  Thus, respondent maintains that her position remained substantially justified throughout the judicial proceeding.

1.   The Administrative Proceeding

We begin with petitioner's contention that respondent's position was not substantially justified at the time that the notice of deficiency was issued.

This Court has previously set forth the essential elements of a return:

> First, there must be sufficient data to calculate [a] tax liability; second, the document must purport to be a return; third, there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and fourth, the taxpayer must execute the return under penalties of perjury. [Beard v. Commissioner, 82 T.C. 766, 777 (1984), affd. 793 F.2d 139 (6th Cir. 1986).]

On April 17, 1989, petitioner and Mr. Buck mailed the purported return to respondent. The purported return was not signed by either petitioner or Mr. Buck. Rather, the purported return contained the statement "Fifth Amendment" in the spaces provided for petitioner's and Mr. Buck's signatures.

This Court has specifically held that the submission of an unsigned document purporting to be a return does not constitute the filing of a "return". Beard v. Commissioner, supra at 777-778; Richardson v. Commissioner, 72 T.C. 818, 823 (1979); Joseph v. Commissioner, T.C. Memo. 1996-77 (where Form 1040 contained the statement "5th" in the space provided for the taxpayer's signature, the Court held that such form was not a valid return and did not start the running of the statute of limitations); see Sloan v. Commissioner, 102 T.C. 137 (1994), affd. 53 F.3d 799 (7th Cir. 1995); see also sec. 6061; sec. 1.6061-1(a), Income Tax Regs. Thus, the purported return submitted by petitioner and Mr. Buck on April 19, 1989, did not constitute a return.

As relevant herein, the term "deficiency" is defined by section 6211(a) as the excess of the amount of tax actually due over the amount shown as tax by the taxpayer upon the return, if the taxpayer made a return showing an amount of tax due. Sec. 6211(a)(1)(A). Because petitioner did not file a return before the notice of deficiency was issued, a deficiency existed in an amount equal to the entire tax due. See sec. 6211(b)(1); Olmstead v. Commissioner, T.C. Memo. 1993-216 (where the taxpayer

paid taxes through withholding but failed to file a return, the Court held that the amount of the deficiency was equal to the amount of tax due); Schneiker v. Commissioner, T.C. Memo. 1989-378 (where the taxpayer submitted an invalid return, the Court held that the amount shown as the tax by the taxpayer upon his return was zero).

A taxpayer's liability for a deficiency becomes fixed, or accrues, by an assessment of the tax. See secs. 6201, 6203. If a taxpayer fails to file a return, then in order to assess a tax liability, the Commissioner generally must issue a notice of deficiency. Sec. 6212(a). It is for this reason that respondent issued the notice of deficiency to petitioner, who had not previously filed a return.

Because petitioner was liable for income tax for 1988, and because she did not self-assess such liability by filing a valid return for that year before the mailing of the notice of deficiency, we hold that respondent was substantially justified in issuing the notice of deficiency.

2. The Judicial Proceeding

Petitioner further contends that respondent's position was not substantially justified at the time respondent filed the answer because respondent had information available to her at that time demonstrating that petitioner had satisfied her income tax liability in April 1989. As previously indicated, respondent

filed the answer on August 30, 1995, approximately 2-1/2 months after petitioner and Mr. Buck submitted the filed return.

Respondent contends that she was not able to obtain the filed return and verify the information on such return before she filed the answer. Specifically, respondent asserts that the filed return was not readily available to her Houston District Counsel office because: (1) The filed return had only recently been filed; and (2) the filed return was difficult to locate because it was located under Mr. Buck's account, rather than petitioner's, apparently because Mr. Buck's TIN was the "primary TIN" and petitioner's TIN was the "spousal TIN."

We have no reason to question respondent's explanation. We also note that the petition contained an allegation that the purported return was "accepted" by respondent "for all purposes" and that assessment of any deficiency against petitioner for the taxable year 1988 was barred by the 3-year statute of limitations. Rule 39 obligated respondent to address this matter in the answer by way of affirmative allegations if respondent wished to preserve the issue. Accordingly, we conclude that respondent's position on August 30, 1995; i.e., that petitioner was liable for income tax for 1988, was substantially justified.

Finally, petitioner contends that respondent took an unreasonable amount of time to verify the information on the filed return and settle the case. Here we recall that

petitioner's case was transferred from respondent's District Counsel office in Houston to respondent's District Counsel office in Oklahoma City for trial preparation because petitioner had designated Oklahoma City as the place of trial. Thereafter, the record demonstrates that respondent acted reasonably promptly in settling the case. Thus, shortly after being assigned the defense of this case, respondent's counsel contacted petitioner's counsel. Thereafter, respondent's counsel acted promptly to retrieve the filed return from the Austin Service Center. Upon receiving the filed return, respondent's counsel again acted promptly in ordering transcripts of account in order to verify the correctness of the return. After those transcripts were received in January 1996, respondent's counsel immediately conceded that petitioner had paid her tax liability for 1988 and apparently also conceded that petitioner was not liable for the addition to tax under section 6654(a). Respondent's counsel conceded the balance of the case on March 1, 1996, and no later than March 5, 1996, he mailed the form of decision to petitioner's counsel for his signature. Thus, this case was completely settled 6 months after respondent filed the answer. In this regard, we observe that some delay in the settlement process, in and of itself, does not make respondent's position unreasonable. See Sokol v. Commissioner, 92 T.C. at 765, and cases cited therein.

Although one might wish that settlement had come even quicker, the present case is not one in which respondent adopted an inflexible attitude concerning settlement or attempted in an unfair manner to cause petitioner to compromise her case. Similarly, petitioner has not shown that respondent advanced a position that respondent knew to be factually or legally incorrect. Further, petitioner has not shown that respondent pursued her position for purposes of harassment or embarrassment, or out of political motivation, or for any other improper purpose.

In addition, and as we have already noted, the petition contained an allegation that the purported return was "accepted" by respondent "for all purposes" and that assessment of any deficiency against petitioner for the taxable year 1988 was barred by the 3-year statute of limitations. Petitioner ultimately abandoned this position, as demonstrated by the fact that the form of decision reflects a deficiency in the amount of $24,939.21.[10] Under these circumstances, we are unable to conclude that respondent acted unreasonably in not settling the entire case before March 1, 1996.

In summary, petitioner has not established that respondent's position, either in the administrative proceeding or in the

_____

[10] See sec. 7459(e), which provides that if the assessment of any tax is barred by any statute of limitations, then this Court's decision to that effect shall be considered as its decision that there is no deficiency in respect of such tax.

judicial proceeding, was unreasonable and therefore not substantially justified.[11]  Consequently, petitioner does not qualify as a "prevailing party" within the meaning of section 7430(c)(4).  We therefore hold that petitioner is not entitled to an award of administrative or litigation costs.

In order to reflect the foregoing,

<u>An appropriate order and decision will be entered.</u>

---

[11] We therefore need not decide whether petitioner substantially prevailed, exhausted administrative remedies, or unreasonably protracted the administrative proceeding, or whether the costs incurred by petitioner were reasonable.