T.C. Memo. 2005-176

UNITED STATES TAX COURT

HAROLD A. LANGE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7178-03.                    Filed July 19, 2005.

Harold A. Lange, pro se.

<u>Beth A. Nunnink</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined a deficiency of $8,301 and additions to tax of $2,075.25 and $443.40 under sections[1] 6651(a)(1) and 6654, respectively, with respect to petitioner

_____

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Harold A. Lange's (petitioner) Federal income tax for 2000. After concessions by respondent, the issues remaining for decision are:

(1) Whether the Form 1040, U.S. Individual Income Tax Return, submitted by petitioner with respect to the 2000 taxable year constitutes a valid return, and consequently whether petitioner is liable for an addition to tax under section 6651(a);

(2) whether petitioner had $46,306 of gross income from pension distributions, gambling winnings, and Social Security benefits received in 2000;

(3) whether petitioner is entitled to deductions for gambling losses, charitable contributions, and certain closing costs arising from a home mortgage refinancing greater than those conceded by respondent;

(4) whether petitioner is liable for an addition to tax pursuant to section 6654.

## FINDINGS OF FACT

The parties have stipulated some of the facts, which are incorporated herein by reference. Petitioner lived in Tennessee at the time the petition was filed.

<u>Petitioner's Form 1040</u>

On April 17, 2001, petitioner mailed a signed 2000 Form 1040, U.S. Individual Income Tax Return (2000 Form 1040), along

with a Schedule A, Itemized Deductions; two Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.; and a Form W-2G, Certain Gambling Winnings. Attached to the front of the 2000 Form 1040 was a cover page which stated:

> This tax return is being filed under protest, without prejudice, for explanation, please see the attached 38 page protest document and memorandum, marked and identified by its U.S. registered mail number. It is a federal crime under Title 18 U.S.C. to remove this protest document from the attached return, it is to remain a permanent part of the records with this return.

As indicated on the foregoing cover page, a 38-page protest document[2] (protest document) was attached to the 2000 Form 1040. In the "label" box on the front page of the 2000 Form 1040, the phrase "Spouse's Social Security number" was lined through, and in the space reserved for entry of a spouse's social security number there was written "under protest without prejudice". In the jurat/signature box on the back page, immediately below petitioner's signature, the phrase, "Spouse's signature, if a joint return, both must sign", had also been lined through and replaced with the handwritten phrase, "under protest, without prejudice".

The 2000 Form 1040 reported $34,508 on line 7, "Wages salaries, tips, etc.", $11,501 on line 20b, "Social security

---

[2] The protest document had attached to it an additional 17-page exhibit.

benefits, Taxable Amount".  Additionally, $1,000 was reported on line 21, "Other income", and the word "lotto" was handwritten in a blank space beside the number.  Thus, $47,009 was reported as "total income" on line 22.  After claiming itemized deductions of $12,111 and three exemptions, "Taxable income" was reported as $26,498 on line 39.  Nonetheless, line 40 of the 2000 Form 1040, "Tax", was left blank, and $0 was reported on line 57, "total tax".  On line 69, "amount you owe," $4,563 was reported.[3]

With respect to the 2000 taxable year, no payments of estimated tax were made by petitioner, no tax was withheld, nor was any payment sent with the 2000 Form 1040.

In the protest document, petitioner states that he is filing his return "by special appearance, 'under protest without prejudice'".  In the document, petitioner makes various arguments, contending, e.g., that he is not an "individual", as that term is used in sections 1 and 3, that only government-sourced consideration is subject to taxation, that private sector employees should not be taxed at the same rate as public employees, and that applying the tax rates of section 1 to him is

---

[3] The entry of $4,563 as the amount owed is inexplicable from the face of the return, since line 69, "amount you owe", instructs the taxpayer that the entry thereon should be the result of subtracting line 65, "total payments", from line 57, "total tax", and both lines 57 and 65 were reported as $0 on the return.

unconstitutional, constituting a "crime of extortion and perjury".

The protest document concludes by stating that unless the Internal Revenue Service responds to the protest document and rebuts each of the arguments raised, then the IRS "agrees to the complete contents of this * * * [protest document], and will raise no defenses to the contents, nor claim a tax liability imposed under 26 U.S.C. §1 or 3, to be due and owing upon the undersigned by your agency or in a court of law". The document further explains that "a failure to answer in rebuttal" by the IRS will constitute agreement that the IRS "will not raise in court, any defense or collateral attack on the issues of * * * [petitioner's] position as to the procedures, facts, or law as set forth herein".

Pension Distributions

Petitioner was retired during 2000. In that year, he received distributions from the National Electrical Benefit Fund (NEBF) of $11,082 and the Electrical Workers Trust Fund (EWTF) of $22,723. These receipts were reported as fully taxable distributions on Forms 1099-R by NEBF and EWTF.

The NEBF's plan summary provides that "all contributions to the NEBF are made by covered employers. Employees are neither required nor permitted to make contributions". According to the plan, the employer contributes three percent of the covered

employee's gross labor payroll. The EWTF plan also provides that "contributions by an employee shall not be permitted under the Plan". Under this plan, an employee's eligibility to receive contributions is based upon his years of service, as defined under the plan.

### Gambling Winnings and Losses

Petitioner purchased a winning ticket and received $1,000 in proceeds from the Kentucky Lottery Corporation in March 2000. After obtaining the winning ticket in March, petitioner began saving his (losing) tickets for the remainder of the year. The aggregate cost of those tickets was $851. Petitioner claimed $1,000 in gambling losses on the 2000 Form 1040. Respondent now concedes that petitioner had gambling losses of $851 in 2000.

### Social Security Benefits

Petitioner received and cashed Social Security benefit checks totaling $13,531 in 2000.

### Charitable Contributions

Petitioner claimed $4,143 in charitable contribution deductions on the 2000 Form 1040 he submitted but kept no records regarding the claimed contributions.

### Home Mortgage Refinancing

On March 27, 2000, petitioner refinanced the mortgage on his residence. In connection with the refinancing, petitioner paid $337.50 in prepaid hazard insurance, $85.28 of interest due on

the mortgage loan being replaced, and various closing costs

totaling $948.95, described on the settlement sheet as follows:

| | |
|---|---:|
| Loan origination fee 0.218% | $167.00 |
| Appraisal fee | 250.00 |
| Flood | 17.00 |
| Attorney's fees | 391.00 |
| Recording fees | 32.00 |
| State tax/stamps | 87.95 |
| Computer filing fee | 4.00 |

On Schedule A of the 2000 Form 1040, petitioner claimed an

itemized deduction for "closing costs on house" of $1,367.73, a

figure which closely approximates the $1,371.73 total of the

foregoing payments.[4]

Notice of Deficiency

After the 2000 Form 1040 was referred to three units of

respondent, a notice of deficiency was issued to petitioner for

the 2000 taxable year in which it was determined that petitioner

had failed to file a return and had taxable income of $39,831,[5]

resulting in a deficiency of $8,301 and additions to tax under

section 6651(a)(1) for failure to file and section 6654 for

failure to pay estimated tax.  Petitioner timely filed a petition

for redetermination.

---

[4] The $4 discrepancy is not explained in the record.

[5] This taxable income figure represented gross income of $46,306 from pension distributions, Social Security benefits and gambling winnings, less the standard deduction and a personal exemption.

OPINION

I.  <u>Burden of proof</u>

Petitioner has neither claimed nor shown entitlement to a shift in the burden of proof to respondent with regard to any factual issue pursuant to section 7491(a).  Accordingly, petitioner bears the burden of proof and production with respect to all issues in this case, except as provided in section 7491(c).  See Rule 142(a).

II.  <u>Validity of the 2000 Form 1040 and Section 6651(a) Addition</u>

Respondent argues that the 2000 Form 1040 does not constitute a valid return and that petitioner is therefore liable under section 6651(a) for an addition to tax for failure to file.

Section 6011(a) requires taxpayers to file returns in accordance with the forms and regulations prescribed by the Secretary.  See sec. 1.6011-1(a), Income Tax Regs.  In addition, taxpayers are required to verify by written declaration that their submitted returns have been made under penalties of perjury.  Sec. 6065; see also sec. 1.6065-1(a), Income Tax Regs. A taxpayer satisfies this requirement by signing the preprinted jurat contained on the Form 1040, see <u>Sloan v. Commissioner</u>, 102 T.C. 137, 146-147 (1994), affd. 53 F.3d 799 (7th Cir. 1995), which is a declaration under penalties of perjury that the return is "true, correct, and complete".

Even where the taxpayer fails to follow the prescribed forms, a document will be treated as a valid return for purposes of section 6651(a) if it satisfies the following: (i) It contains sufficient data to calculate tax liability; (ii) it purports to be a return; (iii) it represents an honest and reasonable attempt to satisfy the requirements of the tax law; and (iv) it is executed under penalties of perjury. Beard v. Commissioner, 82 T.C. 766, 777 (1984), affd. 793 F.2d 139 (6th Cir. 1986).

In determining the validity of a return, this and other courts have generally held that alterations of the language of the jurat itself invalidates a return. See Hettig v. United States, 845 F.2d 794, 795 (8th Cir. 1988) (per curiam); Mosher v. Commissioner, 775 F.2d 1292, 1294 (5th Cir. 1985) (per curiam); Borgeson v. United States, 757 F.2d 1071, 1073 (10th Cir. 1985) (per curiam); United States v. Moore, 627 F.2d 830, 834 (7th Cir. 1980); Cupp v. Commissioner, 65 T.C. 68, 78-79, affd. without published opinion 559 F.2d 1207 (3d Cir. 1977); Andrews v. Commissioner, T.C. Memo. 1999-281; Hodge v. Commissioner, T.C. Memo. 1998-242; Counts v. Commissioner, T.C. Memo. 1984-561, affd. 774 F.2d 426 (11th Cir. 1985).

Where statements are added that do not modify the specific language of the jurat, the validity of the return depends upon whether the additional statements disclaim liability or otherwise qualify the jurat by casting doubt on the jurat's declaration

that the return is true, correct, and complete.  For example, the mere addition near the jurat of the words "under protest" will not invalidate the return.  See McCormick v. Peterson, 73 AFTR 2d 94-597, 94-1 USTC par. 50,026 (E.D.N.Y. 1993); see also Todd v. United States, 849 F.2d 365, 367 (9th Cir. 1988) (addition of words "signed involuntarily under penalty of statutory punishment" below the jurat did not invalidate return).  However, where the purported return refers to and includes an accompanying statement that disclaims liability for the tax reported on the return or appears to contradict the declarations in the jurat, the return is invalid, as the accompanying statement vitiates the jurat.  Williams v. Commissioner, 114 T.C. 136 (2000); Sloan v. Commissioner, supra.  Doubts regarding whether the accompanying statement has qualified the jurat so as to invalidate the return are resolved in the Commissioner's favor.  Sloan v. Commissioner, 53 F.3d 799, 800 (7th Cir. 1995), affg. 102 T.C. 137.

For example, in Sloan, the purported returns contained the following statement after the preprinted jurat, immediately above the taxpayer's signature, "Denial and Disclaimer attached as part of this Form".  Attached to the purported returns was the following statement:

> "I submit this 'Denial and Disclaimer' as an attachment
> to the IRS Form 1040 for the year stated above.  I deny
> that I am liable or made liable for any '1040 income
> tax' for the above stated year. * * *  My signature on
> the form is not an admission of jurisdiction or
> submission to subject status. I 'disclaim liability'

for any tax shown on the form."  [Sloan v. Commissioner, 102 T.C. at 141.]

We concluded that the attached statement "[raised] serious questions about whether petitioner [was] 'denying' the accuracy of the information contained in the return, 'disclaiming' the jurat altogether, or simply protesting the tax laws".  Id. at 145.  Consequently, we held that the return was invalid.  We reached the same result in Williams v. Commissioner, supra, where the extraneous entry was made as an asterisk to the "amount owed" line on the return rather than near the jurat, and stated: "The admitted liability is zero.  See attached Disclaimer Statement." Id. at 138.  The attached statement provided:

> The above named taxpayer respectfully declines to volunteer concerning assessment and payment of any tax balance due on the return or any redetermination of said tax.  Be it known that the above said taxpayer, therefore, denies tax liability and does not admit that the stated amount of tax on return is due and collectable. * * * [Id.]

Relying in part on Sloan, we concluded that the attached statement rendered the return invalid, because it "called into question the veracity, accuracy, and completeness" of the purported return, thereby vitiating the jurat.  Id. at 142.

Here, petitioner signaled the inclusion of a disclaimer statement to the 2000 Form 1040 by means of an attached cover page, which stated that the 2000 Form 1040 was being filed "under protest, without prejudice" and that an explanation of the protest-without-prejudice was contained in an "attached 38 page

protest document and memorandum".  The "under protest without prejudice" phrase was also entered twice on the face of the return, once in close proximity to the jurat.

The protest document itself states various propositions, including the claim that petitioner is not an "individual" within the meaning of sections 1 and 3 (notwithstanding that the 2000 Form 1040 purports to be a "2000 U.S. Individual Income Tax Return"), and that application of the tax rates in section 1 to petitioner is unconstitutional.  Further, the protest document concludes by asserting that unless respondent responds to the document and rebuts each argument raised, then respondent "will raise no defenses to the contents, nor claim a tax liability imposed under 26 U.S.C. § 1 or 3, owing by the undersigned by your agency or in a court of law".

We find that the protest document disclaims liability and tends to negate the declarations in the jurat.  Any voluntary agreement to a tax liability in the jurat is expressly conditioned in the protest document upon certain further actions by respondent.  Moreover, the assertion in the protest document that petitioner is not an "individual" for purposes of sections 1 and 3 contradicts any purported self-assessment of his liability made on the face of the 2000 Form 1040, which by its terms is a form for reporting Federal income tax of an individual.  At a minimum, the protest document raises substantial doubts that

petitioner affirms the veracity, accuracy, and completeness of the return, as declared in the jurat. Following Williams and Sloan, we therefore hold that the 2000 Form 1040 is not a valid return, as the jurat has been vitiated by an accompanying statement. The declarations in the protest document produce just the kind of "guessing game" about the document's import that we refused to require the Commissioner to undertake in Sloan and Williams.[6]

Moreover, as was the case in Williams, the 2000 Form 1040 herein would also fail at least two parts of the four-part test of a valid return enunciated in Beard v. Commissioner, 82 T.C. at 777. First, because the jurat has been vitiated, the 2000 Form 1040 has not been executed under penalties of perjury. Second, we conclude that the 2000 Form 1040 does not represent an honest and reasonable attempt to satisfy the requirements of the tax law. Petitioner's contention in the protest document that he is not an "individual" as that term is used in sections 1 and 3 is frivolous. While items of income are reported and taxable income is purportedly computed, the entries on the lines for "tax" and "total tax" are blank and $0, respectively. Inexplicably, after reporting both "total tax" and "total payments" as $0, petitioner

---

[6] We note that the 2000 Form 1040 was considered by three units of respondent before respondent concluded that the document could not serve as the basis for assessing any Federal income tax liability for petitioner for 2000.

entered $4,563 as the "amount owed", even though this last figure should be the difference between the first two. We conclude that these entries were made in bad faith, exemplifying petitioner's misguided efforts to disclaim liability for tax.

We accordingly sustain respondent's determination that petitioner is consequently liable for an addition to tax pursuant to section 6651(a) for failure to file.

III. Gross Income

Respondent determined that petitioner had gross income of $46,306 in 2000, consisting of pension distributions from NEBF and EWTF, gambling winnings, and Social Security benefits.

A. Pension Distributions

With respect to the pension distributions, petitioner stipulated that he received $11,082 from NEBF and $22,723 from EWTF in 2000 and respondent determined that these amounts were includible in petitioner's gross income. Pension disbursements are generally includible in gross income under section 61(a)(11). However, disbursements of employee contributions to a pension plan constitute a nontaxable return of capital. See Ashman v. Commissioner, T.C. Memo. 1998-145; Knight v. Commissioner, T.C. Memo. 1989-219. At trial, petitioner appeared to argue that the pension disbursements received were derived from employee contributions since the amounts contributed by his employers were determined by the number of hours he worked. Petitioner's

argument misconstrues the nature of an employee contribution, however. The pension plans for NEBF and EWTF each prohibit employee contributions. We are persuaded that no portion of the pension disbursements at issue constituted the return of an employee contribution and consequently sustain respondent's determination.

B. Gambling Winnings

Respondent determined that the $1,000 lottery proceeds received by petitioner in 2000 were includible in gross income as gambling winnings. Lottery proceeds are gambling winnings, taxable under section 61(a). See, e.g., Solomon v. Commissioner, 25 T.C. 936 (1956); Rusnak v. Commissioner, T.C. Memo. 1987-249. Petitioner makes a series of arguments on brief concerning the nature of "income" for Federal income tax purposes that do not persuade us of any error in respondent's determination. Accordingly, respondent's determination is sustained.

C. Social Security Benefits

Respondent determined that $11,501 of the $13,531 in Social Security benefits received by petitioner in 2000 was includible in his gross income for that year.[7]

_____

[7] On brief, respondent erroneously states that the includible portion is the total amount of benefits received ($13,531) rather than 85 percent of that amount ($11,501) as determined in the notice of deficiency. See sec. 86 (a)(2), (c)(1) and (2).

Because petitioner had $34,805 of adjusted gross income in 2000 (per our redetermination thus far), he was required to include 85 percent of the Social Security benefits in gross income.  See sec. 86(a)(2), (c)(1) and (2).

The only argument petitioner advances in challenging respondent's determination is that he attempted to surrender his Social Security card and instructed the Social Security Administration to return his contributions.  Petitioner conceded, however, that he cashed all Social Security benefit checks he received.  On this record, we sustain respondent's determination to include $11,501, 85 percent of the $13,531 of Social Security benefits received, in petitioner's gross income for 2000.

IV.  Deductions

A.  Gambling Losses

Section 165(d) provides that losses from wagering transactions may be deducted to the extent of gains from such transactions.  The burden of substantiating wagering loss deductions by keeping sufficient records of such deductions is on the taxpayer.  Mayer v. Commissioner, T.C. Memo. 2000-295, affd. 29 Fed. Appx. 706 (2d Cir. 2002); Mack v. Commissioner, T.C. Memo. 1969-26, affd. 429 F.2d 182 (6th Cir. 1970); sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Petitioner produced losing lottery tickets for 2000 totaling $851, and respondent now concedes that he had wagering losses in

that amount. Petitioner's unchallenged testimony at trial was that he purchased the same amount of lottery tickets each week, at a cost of approximately $80 per month, and that he began saving his (losing) tickets after he won the $1,000 in March 2000. The $851 total for the tickets purchased from March through December 2000 corroborates petitioner's testimony. Petitioner's testimony is unimpeached and should not be disregarded. See Loesch & Green Constr. Co. v. Commissioner, 211 F.2d 210, 212 (6th Cir. 1954). We accordingly conclude that petitioner has provided reasonable evidentiary support for invocation of the Cohan rule, and find that he had additional gambling losses of $160 in January and February of 2000. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). These losses fully offset the gambling winnings for 2000, but are not further deductible. See sec. 165(d); see also Offutt v. Commissioner, 16 T.C. 1214 (1951).

B. Charitable Contribution Deductions

Section 170 provides that charitable contributions may be deducted from gross income "if verified under regulations prescribed by the Secretary". Under the regulations, a taxpayer must maintain records of each contribution, such as a canceled check, a receipt, or other reliable records from the charitable organization. Sec. 1.170A-13(a)(1), Income Tax Regs.

Petitioner claimed $4,143 in charitable contribution deductions on the 2000 Form 1040, yet conceded at trial that he had no records to substantiate any amount. Although petitioner testified in very vague terms about having made gifts of clothing and cash to the Salvation Army, his testimony provides no basis on which we might make even a guess at the actual amount donated. See Vanicek v. Commissioner, supra. We accordingly conclude that petitioner is not entitled to any deduction for charitable contributions in 2000.

## C. Closing Costs for Mortgage Refinancing

Petitioner claimed an itemized deduction of $1,367.73 for "closing costs" on the 2000 Form 1040, representing amounts he paid in 2000 in connection with refinancing the mortgage on his residence. The parties now agree that $85.28 of this figure represents home mortgage interest, and respondent has conceded petitioner's entitlement to deduct that amount. Respondent maintains that petitioner is not entitled to any additional amount. These amounts consist of $337 of prepaid hazard insurance and $948.95 in other closing costs that petitioner paid in connection with the refinancing, as itemized in our findings of fact.

As for the prepaid hazard insurance, the cost of insuring a dwelling owned and occupied by a taxpayer as a personal residence

is not deductible.  Sec. 1.262-1(b)(2), Income Tax Regs.  Thus, petitioner is not entitled to deduct the foregoing amount.[8]

Also included in the closing costs that petitioner seeks to deduct is a $167 "loan origination fee", which is further described on the settlement sheet as "0.218%".  Petitioner has offered no evidence concerning whether this amount represents prepaid interest or instead a payment for services rendered by the financial institution that provided the financing.  Thus, this amount is not deductible as interest under section 163.  Goodwin v. Commissioner, 75 T.C. 424, 440-442 (1980), affd. 691 F.2d 490 (3d Cir. 1982); Wilkerson v. Commissioner, 70 T.C. 240, 253 (1978), revd. on another issue 655 F.2d 980 (9th Cir. 1981); Enoch v. Commissioner, 57 T.C. 781, 794-795 (1972); Cao v. Commissioner, T.C. Memo. 1994-60, affd. 78 F.3d 594 (9th Cir. 1996); Dozier v. Commissioner, T.C. Memo. 1982-569.

Since petitioner has failed to show that the loan origination fee is interest, it falls into the same category as the bulk of the remaining closing costs that he seeks to deduct; namely, the $250 appraisal fee, the $391 attorney's fee, and the

---

[8] Petitioner also seeks to deduct $17 listed on the settlement sheet as for "flood".  Other than the settlement sheet, petitioner offered no evidence concerning what the "flood" item represents.  Given the evidence, we conclude that the item is either flood insurance, in which case it is not deductible under the authority cited above, or it is something else, not deductible for lack of proof concerning the nature of the expenditure.

$4 "computer filing fee".  All are costs for services rendered in connection with obtaining the refinancing and are not currently deductible.[9]  See, e.g., Goodwin v. Commissioner, supra, at 440-441; Trivett v. Commissioner, T.C. Memo. 1977-161, affd. 611 F.2d 655 (6th Cir. 1979).

The remaining closing costs that petitioner seeks to deduct are described in the settlement sheet as $32 in "Recording Fees" and $87.95 in "State tax/stamps".  State and local transfer and recordation taxes are not deductible expenses.  Gibbons v. Commissioner, T.C. Memo. 1976-125.

V.  Section 6654 Addition to Tax

Respondent determined that petitioner was liable for an addition to tax pursuant to section 6654 for failure to pay estimated tax.  Under section 7491(c), respondent bears the burden of production with respect to petitioner's liability for an addition to tax.  Once respondent has met that burden, it is petitioner's burden to show exculpatory factors such as reasonable cause or that respondent's determination is incorrect.  See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

_____

[9] In the circumstances of this case, we need not decide whether any portion of the closing costs is amortizable over the life of the refinancing loan, as there is no evidence concerning the loan's term nor proof that the proceeds of the loan were used for business or investment rather than personal purposes.

We have sustained respondent's determinations that petitioner had gross income of $46,306 in 2000. Petitioner admitted on the 2000 Form 1040 that no estimated taxes were paid nor was any tax withheld with respect to 2000. The information returns of NEBF, EWTF, and the Kentucky Lottery Corporation likewise corroborate that no tax was withheld with respect to petitioner's pension disbursements and lottery winnings. We accordingly conclude that respondent has met his burden of production with respect to the section 6654 addition. As petitioner's only argument is that "there is no longer legislation which authorizes" the section 6654 addition to tax, we sustain respondent's determination.

## VI. Conclusion

We have considered all remaining arguments made by the parties for contrary holdings and, to the extent not addressed, find them to be irrelevant, moot, or meritless.

To reflect the foregoing,

Decision will be entered

under Rule 155.