T.C. Memo. 2007-146

UNITED STATES TAX COURT

WILSON D. WATSON,[1] Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 18616-03, 18991-03,   Filed June 12, 2007.
            19206-03, 16592-04.


        R rejected the Forms 1040 submitted by P for 1998,
1999, 2001, and 2002 (all of which reported zero tax
owed) as frivolous and prepared substitute returns
pursuant to which he determined deficiencies for all 4
years and additions to tax under secs. 6651(a)(1),
I.R.C., (for all years), 6651(a)(2), I.R.C., (for 2002)
and 6654, I.R.C., (for 1999 and 2001).  R conceded
certain income inclusions for all years, the addition
to tax under sec. 6651(a)(2), I.R.C., and the 2001
addition to tax under sec. 6654, I.R.C.  R's income
inclusions, after concessions, consist of (1)
"wages/misc. income" for 1998 and 1999, (2) retirement
distributions for all years, (3) interest income for
1998, and (4) Social Security payments for 2001 and
2002.  R also asks us to impose a penalty under sec.

_____

        [1]  The cases were consolidated by orders of the Court dated
Feb. 17 and Oct. 13, 2004.

6673(a)(1), I.R.C.  P puts forth frivolous tax-
protester arguments in opposition to R's proposed
income inclusions and additions to tax.

1.  Held:  R's nonconceded inclusions in P's
income for 1998 and 1999 are sustained.

2.  Held, further, P had zero includable Social
Security benefits for 2001 and 2002, and, because his
adjusted gross income without those benefits is less
than his standard deduction and personal exemption, he
incurs no income tax deficiencies for those years.

3.  Held, further, P is liable for additions to
tax under sec. 6651(a)(1), I.R.C., for 1998 and 1999
and for an addition to tax under sec. 6654, I.R.C., for
1999.

4.  Held, further, because P was not required to
file returns for 2001 and 2002, he is not liable for
additions to tax under sec. 6651(a)(1), I.R.C., for
those years.

5.  Held, further, P is liable for a penalty under
sec. 6673(a)(1), I.R.C.


Wilson D. Watson, pro se.

Randolph J. Buchanan, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  By notices of deficiency, respondent
determined deficiencies in income tax and additions to tax for
petitioner's taxable (calendar) years 1998, 1999, 2001, and 2002
as follows:

|       |            | Additions to Tax |                 |             |
|-------|------------|------------------|-----------------|-------------|
| Year  | Deficiency | Sec. 6651(a)(1)  | Sec. 6651(a)(2) | Sec. 6654(a) |
| 1998  | $9,294     | $1,862.25        | --              | --          |
| 1999  | 2,298      | 574.50           | --              | $111.21     |
| 2001  | 51,948     | 12,987.00        | --              | 2,076.02    |
| 2002  | 1,759      | 395.78           | $114.34         | --          |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner assigned error to those determinations. Respondent has conceded that certain amounts included by him in petitioner's income for each of the years in issue were improperly included. He has also conceded (1) the $2,076.02 addition to tax under section 6654(a) for taxable year 2001 and (2) the $114.34 addition to tax under section 6651(a)(2) for taxable year 2002. The remaining issues for decision are whether petitioner (1) underreported his income during one or more of the years in issue, and (2) is liable for the additions to tax under section 6651(a)(1) for failure to timely file a return for each of the years in issue and under section 6654 for failure to pay estimated income taxes for 1999.

On June 6, 2005, at the conclusion of the trial, respondent moved to impose a penalty on petitioner under section 6673(a)(1). We shall rule on that motion at the conclusion of this report.

## FINDINGS OF FACT

Some facts have been stipulated and are so found.  The stipulation of facts, with attached exhibits, is incorporated herein by this reference.

Residence

At the time the petitions were filed, petitioner resided in Midland, Texas.

Petitioner's Forms 1040

1998

Petitioner obtained an extension of time to file his 1998 Federal income tax return until October 15, 1999.  On October 7, 1999, petitioner submitted to the Internal Revenue Service (IRS) a Form 1040, Individual Income Tax Return, for 1998 (the 1998 Form 1040).  Petitioner reported $1,114.04 on line 16b (taxable pensions and annuities), which was his only item of reported income for 1998.  Because his standard deduction and personal exemption exceeded his income, he reported a zero tax liability[2] and sought a refund of the tax payments reported on lines 57 (Federal income tax withheld), 58 (1998 estimated tax payments and amount applied from 1997 return), and 62 (excess Social Security tax withheld), which totaled $5,534.36.  He attached copies of (1) a Form W-2, Wage and Tax Statement, for 1998 from

---

[2] For the same reason, petitioner reported a zero tax liability for the other years at issue:  1999, 2001, and 2002.

Watson and Associates of Midland, Inc. (Watson, Inc.), reporting the payment of $48,000 in wages to petitioner and withheld income and Social Security taxes of $1,845 and $2,976, respectively (both of which amounts were reflected on the 1998 Form 1040 and included in the total amount for which petitioner sought refund), and (2) a Form 1099-R, Distributions From Annuities, Retirement or Profit Sharing Plans, IRAs, Insurance Contracts, etc., for 1998 from "Mobil Oil Corp Inc Pension Plan" (Mobil Pension Trust) reporting a $1,114.04 distribution to petitioner, the amount petitioner reported on line 16b of the 1998 Form 1040. The 1998 Form 1040 does not include $80.22 of interest reflected on a Form 1099-INT, Interest Income, issued to petitioner by Amerus Life Insurance Company, which form was not attached to the 1998 Form 1040. Petitioner signed the 1998 Form 1040 under the preprinted jurat,[3] but, just above his signature, he wrote "UNDER PROTEST Without Prejudice". Also, on line 7 of the 1998 Form 1040, petitioner wrote "See attached letter to the Social Security Administration". In that letter, dated October 4, 1999, and in an attachment to it (a letter from petitioner to Watson, Inc., dated January 11, 1998 (the Watson, Inc., letter)), petitioner argues, on the basis of regulations and cases cited therein, that

---

[3] The jurat is the portion of the Form 1040 which reads: "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete."

- 6 -

he acted as a "private independent contractor" on behalf of Watson, Inc. (as opposed to an employee or a self-employed individual) and, therefore, has "no liability for tax under Title 26 USC, Sub Chapter [sic] C, Employment Taxes".  In the Watson, Inc., letter, petitioner states that he is providing the letter to Watson, Inc., for its records, pursuant to section 31.3402(n)-1, Employment Tax Regs.  Section 31.3402(n)-1, Employment Tax Regs., is concerned with employees incurring no income tax liability; it provides that an employer shall deduct and withhold no tax if there is in effect with respect to an employee a withholding exemption certificate furnished to the employer by the employee containing statements that the employee incurred no income tax liability for the employee's preceding taxable year and the employee anticipates that he will incur no income tax liability for his current taxable year.  In the Watson, Inc., letter petitioner acknowledges that he will be paid for his work for Watson, Inc., during 1998.

    1999

    Petitioner obtained an extension of time to file his 1999 Federal income tax return until August 15, 2000.  Sometime thereafter, petitioner submitted to the IRS a Form 1040 for 1999 signed by him and dated August 17, 2001 (the 1999 Form 1040). Petitioner reported $3,342.12 on line 20b (taxable Social Security benefits), which was his only item of reported income

for 1999. Petitioner did not report any taxes paid or withheld for 1999, and he reported zero tax liability for the year. Petitioner attached copies of (1) a Form W-2 for 1999 from Watson, Inc., reporting the payment of $10,000 in wages to petitioner and zero Federal income tax withheld, (2) a Form 1099-MISC, Miscellaneous Income, for 1999 from Watson, Inc., reporting the payment of $4,400 to petitioner, and (3) a Form 1099-R for 1999 from Mobil Pension Trust reporting a $3,342.12 distribution to petitioner, the amount he (mistakenly) reported on line 20b of the 1999 Form 1040. Petitioner signed the 1999 Form 1040 under the jurat and, as on the 1998 Form 1040, he wrote immediately above his signature: "Under Protest Without Prejudice". On line 7 of the 1999 Form 1040 he wrote "SEE Attached". In addition, along the length of the left margin of both pages of the 1999 Form 1040 and the page containing copies of the above referenced Forms W-2 and 1099, petitioner inserted the following statement:

> This tax return is being filed under protest, without prejudice, see the attached 48 page protest document and memorandum, marked and identified by its U.S. registered mail number. It is a federal crime under Title 18 U.S.C., to remove this protest document from the attached tax return, it is to remain a permanent part of the records with the return.

On page 1 of the 48 page protest referred to in the above statement, petitioner states:

> All items of alleged income have been reported, even though the undersigned disagrees with the instructions of [sic] the IRS information. This is only done as a precaution, as to avoid criminal prosecution under 26

U.S.C. §§ 7201, 7203, and 7206, and for no other
reason.

Petitioner goes on to cite numerous statutes, regulations, and cases and, in essence, argues that (1) he is not a person or individual "as defined within the scope and purview of [sections 1 and 3]", (2) as a "private independent contractor" he is either entitled to a "reduced or compensatory" tax rate or "the same compensation in benefits and economic protections as the federal employee, appointed or elected official, or corporate or partnership individuals", and (3) only Federal and State employees are subject to the Federal income tax.

2001

Petitioner obtained an extension of time to file his 2001 income tax return until August 15, 2002. On that date petitioner submitted to the IRS a Form 1040 for 2001 (the 2001 Form 1040). Petitioner reported $3,342.12 on line 16b (taxable pensions and annuities), which was his only item of reported income for 2001. Petitioner did not report any taxes paid or withheld for 2001, and he reported a zero tax liability for the year. Petitioner attached copies of (1) a Form SSA-1099-SM, Social Security Benefit Statement, for 2001, which reported $17,616 in gross Social Security benefits paid to petitioner (or for his benefit) in 2001, (2) a "Social Security Benefits Worksheet" on which petitioner computed zero taxable Social Security benefits, and (3) a Form 1099-R for 2001 from Mobil Pension Trust reporting a

$3,342.12 distribution, the amount he reported on line 16b of the 2001 Form 1040. Petitioner signed the 2001 Form 1040 under the jurat, and, as on the 1998 and 1999 Forms 1040, he wrote immediately above his signature: "UNDER Protest, Without Prejudice". Petitioner inserted along one of the margins of both pages of the 2001 Form 1040 and the above-mentioned attachments thereto essentially the same statement that he added to the 1999 Form 1040. The protest document attached to the 2001 Form 1040 contains much of the same material and essentially the same arguments as are contained in the corresponding document attached to the 1999 Form 1040.

2002

Petitioner obtained an extension of time to file his 2002 Federal income tax return until August 15, 2003. On August 14, 2003, petitioner submitted to the IRS a Form 1040 for 2002 (the 2002 Form 1040). Petitioner reported $3,342.12 on line 7 (wages, salaries, tips, etc.), which was his only item of reported income for 2002. Petitioner did not report any taxes paid or withheld for 2002, and he reported a zero tax liability for the year. Petitioner attached copies of (1) a Form 1099-R for 2002 from Mobil Pension Trust reporting a $3,342.12 distribution, the amount he (mistakenly) reported on line 7 of the 2002 Form 1040, (2) a Form SSA-1099-SM for 2002, which reported $18,040.80 in gross Social Security benefits paid to petitioner (or for his

benefit) in 2002 and (3) a worksheet, apparently photocopied from the IRS Form 1040 instructions for 2002, on which petitioner computed zero taxable Social Security benefits. Petitioner signed the 2002 Form 1040 under the jurat, and, as on the 1998, 1999, and 2001 Forms 1040, he wrote immediately above his signature: "Under Protest, Without Prejudice". Petitioner inserted along one of the margins of both pages of the 2002 Form 1040 and the aforementioned attachments thereto essentially the same statement that he had added to the 1999 and 2001 Forms 1040. The protest document attached to the 2002 Form 1040 contains much of the same material and essentially the same arguments as are contained in the protest documents attached to the 1999 and 2001 Forms 1040, and includes an additional argument to the effect that petitioner should be allowed to deduct costs associated with the maintenance and depreciation of his "human machine", just as a company is allowed to depreciate and deduct repair costs associated with machines used in its trade or business.

Respondent's Rejection of Petitioner's Forms 1040

Respondent refused to treat the Forms 1040 submitted by petitioner for the years in issue as valid returns and, instead, prepared substitute returns, which form the basis for the deficiencies and additions to tax determined by respondent.[4] The

---

[4] In letters dated Oct. 28, 1999, addressing the 1998 Form 1040, and Nov. 13, 2001, addressing the 1999 Form 1040,
(continued...)

items included in petitioner's income by respondent (income inclusions or inclusions), after concessions,[5] are as follows: (1) "wages/misc. income" of $48,000 for 1998 and $14,400 for 1999; (2) retirement income of $1,114.04 for 1998 and $3,342.12 for each of the other 3 years in issue (1999, 2001, and 2002); (3) interest income of $80.22 for 1998; and (4) Social Security income of $17,578[6] for 2001 and $18,040.80 for 2002.

_____

[4](...continued)
respondent describes as frivolous the positions taken and arguments contained in those Forms 1040 and in the attachments thereto.

[5] Respondent proposed an increase in petitioner's dividend income for all 4 years in issue, but he has conceded those adjustments because petitioner's ex-wife was awarded the stock to which those dividends related as part of a divorce decree. For the same reason, respondent also has conceded a 1999 proposed capital gain increase relating to gain from the sale of that stock. Respondent has conceded an adjustment to petitioner's income for 2001 on account of discharge of indebtedness since no discharge of the indebtedness occurred by the year's end.

[6] There is no explanation in the record of the apparent discrepancy between the 2001 Form SSA-1099-SM attached to the 2001 Form 1040, which lists $17,616 of Social Security benefits paid to petitioner (or for his benefit) for 2001, and the Certification of Extract from Records issued by the Social Security Administration, which lists $17,578 in total benefits paid to petitioner (or for his benefit) for that year. Respondent included the latter amount in petitioner's income for 2001.

OPINION

I.  Income Inclusions

   A.  1998 and 1999

The parties stipulated[7] that petitioner worked for Watson, Inc., in 1998 and 1999, and petitioner does not dispute his receipt of the amounts reflected as wages or other compensation on the Forms W-2 and 1099-MISC issued by Watson, Inc., for those years.  Whether petitioner constituted an employee of Watson, Inc., or performed services for that company as a "private independent contractor" (petitioner's position), he was in receipt of either "compensation for services" or "gross income derived from business" includable in his gross income under either section 61(a)(1) or section 61(a)(2).  His failure to include in income the amounts received from Watson, Inc. ($48,000 for 1998 and $14,400 for 1999), was improper.

It is also stipulated that petitioner received from Mobil Pension Trust Forms 1099-R reflecting gross distributions to him of $1,114.04 and $3,342.12 for 1998 and 1999, respectively, and

---

[7]  The stipulations are identified as either "Respondent's Stipulations" (1-16) or "Petitioner's Stipulations" (17-36). Petitioner reserved the right to object to respondent's stipulations 3-16, and respondent reserved the right to object to all of petitioner's stipulations.  At the trial, petitioner stated that he had no objections to respondent's stipulations 3-16, and respondent did not raise any objection to petitioner's stipulations.  The stipulation of facts was thereupon received into evidence without objection.  Therefore, we consider the stipulations to be the parties' joint stipulation of facts.

that he received a Form 1099-INT for 1998 from Amerus Life Insurance Company reflecting the payment to him of $80.22 of interest for that year.  Petitioner does not dispute the actual receipt of those amounts, which are properly includable in his gross income under section 61(a)(9) (annuities) and section 61(a)(4) (interest), respectively.

Petitioner makes two arguments in opposition to the inclusion in income of the foregoing amounts:  (1) the notices of deficiency, which are a prerequisite to this Court's jurisdiction to redetermine a deficiency under section 6214,[8] are invalid (essentially because they were based upon substitute returns prepared without valid regulatory authority and were printed on the wrong IRS form), so that the Court lacks jurisdiction for both years, and (2) the compensation and retirement payments to petitioner constituted a return of petitioner's human capital and, therefore, were not income.

Petitioner's arguments respecting the propriety of the substitute returns are meritless tax-protester arguments.  More significantly, the Internal Revenue Code's deficiency procedures (sections 6211-6213) "do not require the Commissioner to prepare a [substitute] return on a taxpayer's behalf before determining and issuing a notice of deficiency."  Roat v. Commissioner, 847

---

[8] See Hannan v. Commissioner, 52 T.C. 787, 791 (1969) ("it is * * * the Commissioner's determination of a deficiency that provides a predicate for Tax Court jurisdiction").

F.2d 1379, 1381-1382 (9th Cir. 1988) (affg. this Court's denial of the taxpayers' motions to dismiss for lack of jurisdiction). Thus, there is no relationship between the Commissioner's preparation or nonpreparation of substitute returns under section 6020(b) and his right to issue a notice of deficiency. See also Geiselman v. United States, 961 F.2d 1, 3 (1st Cir. 1992). Moreover, there is no requirement that a notice of deficiency be issued in any particular form. The purpose of a notice of deficiency "is only to advise the person who is to pay the deficiency that the Commissioner means to assess him; anything that does this unequivocally is good enough". Olsen v. Helvering, 88 F.2d 650, 651 (2d Cir. 1937); see also, e.g., Kellogg v. Commissioner, 88 T.C. 167, 171 (1987) ("No particular form [for a notice of deficiency] is required"); Foster v. Commissioner, 80 T.C. 34, 229 (1983) (all that is required "is that the notice fulfill its purpose of providing formal notification that a deficiency in tax has been determined"), affd. in part and vacated in part 756 F.2d 1430 (9th Cir. 1985); Jarvis v. Commissioner, 78 T.C. 646, 655 (1982) ("The Internal Revenue Code * * * in neither section 6212(a) nor elsewhere prescribes the form of a notice or the specifics to be contained therein."). The deficiency notices issued to petitioner for the years in issue clearly meet the above-described requirements and

are, therefore, adequate to sustain the Court's jurisdiction herein.

Petitioner's argument that his compensation and retirement payments constituted a nontaxable return of human capital is directly refuted by the requirement, under section 61, to include those amounts in gross income and by numerous cases affirming the intent of that section to reach any and all income from whatever source derived unless specifically exempted. See, e.g., Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-430 (1955).

We sustain all of respondent's nonconceded inclusions in petitioner's income for 1998 and 1999.[9]

---

[9] On the Forms 1040 petitioner submitted to the IRS for all of the years at issue, petitioner claimed a filing status of "single". For 1998 and 1999, however, respondent assumed petitioner's filing status to be "married filing separately", and in determining deficiencies for those years, he allowed the standard deduction applicable to taxpayers with that filing status. On brief, petitioner does not dispute respondent's "married filing separately" classification for him for 1998 and 1999. Nor does he allege that he reached age 65 during any of the years in issue. Therefore, in computing, under Rule 155, the deficiencies and penalties imposed herein, respondent may attribute to petitioner a 1998 and 1999 filing status of "married filing separately". Also, respondent may assume, for all years at issue, that petitioner did not attain age 65 and, therefore, was not entitled to an additional standard deduction under sec. 63(f)(1)(A). Thus, for 1998 and 1999, petitioner is entitled to the basic standard deduction provided, under secs. 63(c)(2)(D) and 62(c)(4), to "married filing separately" taxpayers, and, for 2001 and 2002, to the basic standard deduction provided, under secs. 63(c)(2)(C) and 62(c)(4), to "single" taxpayers. Petitioner's filing status is also potentially relevant in determining whether he is required to file returns for the years at issue. See infra discussion.

B.  2001 and 2002

    1.  2001

As will become apparent, it is important to keep in mind that respondent concedes two of the four proposed income inclusions for 2001:  (1) cancellation of indebtedness income in the sum of $169,302, because the debt had not been discharged by the creditor, and (2) $57 of dividend income relating to stock that belonged to petitioner's ex-wife.  See supra note 5. Respondent's remaining proposed inclusions in petitioner's income for 2001 are (1) the retirement distribution of $3,342.12 from Mobil Pension Trust (which was reported by petitioner on the 2001 Form 1040) and (2) Social Security benefits of $17,578.

In arguing that petitioner "realized taxable income in 2001 in the amount of $17,578" from Social Security benefits, respondent has apparently overlooked the impact of his concessions for 2001 upon the computation of includable Social Security benefits under section 86.  Pursuant to section 86(a)(1)(B), (b), and (c)(1)(A), petitioner is taxable on no more than the excess of the sum of his modified adjusted gross income (not including his Social Security benefits) plus one-half of his 2001 Social Security benefits over $25,000 (petitioner's "base amount" under section 86(c)(1)(A)).  Petitioner and respondent agree that his only item of gross income, other than his Social Security benefits (assumed, for this purpose, to be $17,616 (see

supra note 6)), was the $3,342.12 retirement distribution from Mobil Pension Trust. That amount plus one-half of petitioner's 2001 Social Security benefits ($8,808) equals $12,150.12, which is less than $25,000. Therefore, petitioner received zero includable Social Security benefits in 2001. Because his 2001 adjusted gross income of $3,342.12 is less than the sum of his standard deduction and personal exemption ($4,550 plus $2,900, or $7,450), petitioner owes no tax for 2001. As a result, petitioner is not liable for any tax deficiency for 2001.

### 2. 2002

For 2002, respondent alleges that petitioner is taxable on the $3,342.12 retirement distribution from Mobil Pension Trust (which was reported by petitioner on the 2002 Form 1040, line 7, wages, salaries, tips, etc., rather than line 16b, pensions and annuities), and on $18,040.80 of Social Security benefits received in 2002. In 2002, as in 2001, respondent failed to compute petitioner's includable Social Security benefits under section 86. In 2002, as in 2001, the sum of petitioner's adjusted gross income, other than Social Security benefits, ($3,342.12) plus one-half of his Social Security benefits ($9,020), a total of $12,362.12, is less than $25,000 so that petitioner received zero includable Social Security benefits. Because his 2002 adjusted gross income of $3,342.12 is less than the sum of his standard deduction and personal exemption ($4,700

plus $3,000, or $7,700) petitioner owes no tax for 2002. Therefore, he is not liable for any tax deficiency for 2002.

## II. Additions to Tax

### A. Respondent's Section 6651(a)(1) Determinations

#### 1. Introduction

Section 6651(a)(1) provides for an addition to tax in the event a taxpayer fails to file a timely return (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The amount of the addition is equal to 5 percent of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25 percent for returns more than 5 months delinquent.

Respondent argues that petitioner's language insertions above the jurat and along the margins of his Forms 1040 submitted to the IRS for the years in issue and the protests or other documents attached to those forms contradict the declarations in the jurat and, therefore, negate the status of those Forms 1040 as valid returns. As a result, respondent argues that petitioner has failed to file a valid return for any of the years in issue, and he has imposed the full 25-percent penalty for each year.

Alternatively, respondent argues: "Assuming arguendo, that the * * * [petitioner's Forms 1040] constitute tax returns for

1998, 1999, 2001, and 2002, petitioner is still liable for the addition to tax under * * * [section 6651(a)(1)] for failure to <u>timely</u> file his tax returns for those years."  In making that argument, respondent apparently ignores the extensions for time to file that are reflected in his own Certificate of Official Record (Literal Transcript) for each year.  Taking those extensions into account, it appears that only the 1999 Form 1040 was submitted to the IRS after the expiration of the extension period, and that that Form 1040, based upon the August 17, 2001, signature date, was delinquent by more than 1 year.[10]

Petitioner argues that his "failure to file * * * was never proved under the law * * * [and that] therefore the penalty does not apply."

### 2. Requirement To File a Valid Return; Petitioner's Filing Status

Recently, in <u>Lange v. Commissioner</u>, T.C. Memo. 2005-176, we described the requirements for making a valid return:

---

[10]  That the 1999 Form 1040 was submitted more than a year after the Aug. 15, 2000, extended due date (so that petitioner is subject to the maximum 25-percent addition to tax under sec. 6651(a)(1)) is indicated by both the Aug. 17, 2001, signature date and respondent's letter to petitioner describing the 1999 Form 1040 as a "frivolous" return, which was dated Nov. 13, 2001. Although that evidence is sufficient to support such a finding and the resulting conclusion that petitioner is subject to the maximum 25-percent penalty for 1999, for reasons discussed <u>infra</u>, we are able to reach the same conclusion on the ground that petitioner's handwritten and typed additions and his protest attached to the 1999 Form 1040 justify respondent's treating it as an invalid return.

Section 6011(a) requires taxpayers to file returns in accordance with the forms and regulations prescribed by the Secretary. See sec. 1.6011-1(a), Income Tax Regs. In addition, taxpayers are required to verify by written declaration that their submitted returns have been made under penalties of perjury. Sec. 6065; see also sec. 1.6065-1(a), Income Tax Regs. A taxpayer satisfies this requirement by signing the preprinted jurat contained on the Form 1040, see Sloan v. Commissioner, 102 T.C. 137, 146-147 (1994), affd. 53 F.3d 799 (7th Cir. 1995), which is a declaration under penalties of perjury that the return is "true, correct, and complete".

Even where the taxpayer fails to follow the prescribed forms, a document will be treated as a valid return for purposes of section 6651(a) if it satisfies the following: (i) It contains sufficient data to calculate tax liability; (ii) it purports to be a return; (iii) it represents an honest and reasonable attempt to satisfy the requirements of the tax law; and (iv) it is executed under penalties of perjury. Beard v. Commissioner, 82 T.C. 766, 777 (1984), affd. 793 F.2d 139 (6th Cir. 1986).

In determining the validity of a return, this and other courts have generally held that alterations of the language of the jurat itself invalidates a return. See [e.g.,] Hettig v. United States, 845 F.2d 794, 795 (8th Cir. 1988) (per curiam); * * * .

Where statements are added that do not modify the specific language of the jurat, the validity of the return depends upon whether the additional statements disclaim liability or otherwise qualify the jurat by casting doubt on the jurat's declaration that the return is true, correct, and complete. For example, the mere addition near the jurat of the words "under protest" will not invalidate the return. See McCormick v. Peterson, 73 AFTR 2d 94-597, 94-1 USTC par. 50,026 (E.D.N.Y. 1993); see also Todd v. United States, 849 F.2d 365, 367 (9th Cir. 1988) (addition of words "signed involuntarily under penalty of statutory punishment" below the jurat did not invalidate return). However, where the purported return refers to and includes an accompanying statement that disclaims liability for the tax reported on the return or appears to contradict the declarations in the jurat, the return

is invalid, as the accompanying statement vitiates the jurat. <u>Williams v. Commissioner</u>, 114 T.C. 136 (2000); <u>Sloan v. Commissioner</u>, <u>supra</u>. Doubts regarding whether the accompanying statement has qualified the jurat so as to invalidate the return are resolved in the Commissioner's favor. <u>Sloan v. Commissioner</u>, 53 F.3d 799, 800 (7th Cir. 1995), affg. 102 T.C. 137.

However, not every individual with taxable income need make a return. In pertinent part, section 6012(a)(1) provides that an individual whose filing status is "single" need not file a Federal income tax return unless gross income for the taxable year exceeds the sum of the applicable personal exemption amount and the basic standard deduction, and that an individual whose filing status is "married filing separately" need not file a return unless gross income for the taxable year exceeds the applicable personal exemption amount. See sec. 6012(a)(1)(A)(i) and (D). As discussed <u>supra</u> in note 10, for all of the years in issue, petitioner claimed a filing status of "single", but, for 1998 and 1999, respondent assumed a filing status for petitioner of "married filing separately", and applied the return filing thresholds pertinent thereto: $2,700 for 1998 and $2,750 for 1999. That dispute, which we have resolved in respondent's favor (see <u>supra</u> note 9), is moot, however, because even if we assume that the return filing thresholds applicable to "single" filers apply to petitioner, $6,950 for 1998 and $7,050 for 1999, petitioner's gross income for both 1998 and 1999, as redetermined herein, is far in excess of those thresholds, and he was required

to file a valid return for each year.  For 2001 and 2002, there is no dispute that petitioner's filing status was "single". Therefore, his return filing thresholds for those 2 years as a single taxpayer under age 65 (see supra note 9) were $7,450 (for 2001) and $7,700 (for 2002), amounts that exceed his gross income for each of those years, as redetermined herein:  $3,342.12.  As a result, petitioner was not required to file a return for either 2001 or 2002.

### 3.  1998 and 1999

While petitioner's additions of the qualification "under protest without prejudice" between the jurat and his signature on both the 1998 and 1999 Forms 1040, and his addition of the margin language to his 1999 Form 1040, may not amount to a disclaimer of tax liability or a negation of the jurat, we cannot say the same with respect to the effect of the attachment to each Form 1040. Petitioner referred to the attachment to the 1998 Form 1040 on line 7 of that form, and he referred to the attachment to the 1999 Form on both line 7 of that form and in the margin language.

In Sloan v. Commissioner, 102 T.C. 137 (1994), affd. 53 F.3d 799 (7th Cir. 1995), the taxpayers, after the jurats and before their signatures on Forms 1040 submitted for several years, added a reference to an accompanying statement of "denial and disclaimer", by which statement they erroneously denied any Federal income tax liability for the year.  We stated that the

"Denial and disclaimer makes unclear whether petitioner had an 'honest and reasonable intent to supply the information required by the tax code.'"

In Lange v. Commissioner, T.C. Memo. 2005-176, the taxpayer attached a cover letter to the front of his Form 1040, which contained a statement that was virtually identical to the statement inserted into the margin on each page of petitioner's 1999 Form 1040. The taxpayer in Lange also attached a "protest document" to his Form 1040, which contained many of the arguments made in the protest document attached to petitioner's 1999 Form 1040: E.g., he is not an individual as that term is used in sections 1 and 3, private sector employees should not be taxed at the same rate as Government employees, and only Government employment is subject to taxation. In Lange, we determined that such arguments are frivolous and that the taxpayer's Form 1040 did not "represent an honest and reasonable attempt to satisfy the requirements of the tax law" thereby failing to satisfy part 3 of the four-part test under Beard v. Commissioner, 82 T.C. 166 (1984), affd. 793 F.2d 139 (6th Cir. 1986).

The attachment to the 1998 Form 1040 is different from the attachment to the 1999 Form 1040. Principally, it constitutes an argument that petitioner, a self-proclaimed "private independent contractor", received no income subject to employment taxes from his employer, Watson, Inc. As part of that attachment, in the

Watson, Inc., letter, petitioner acknowledges that he will be paid money for working for Watson, Inc., during 1998 but, in part, he justifies his claim that he is not subject to employment taxes on the basis that he anticipates that he will incur no liability for income tax for 1998. In 1998, petitioner received $48,000 from Watson, Inc., that, beyond peradventure, is an item of gross income, reportable, but not reported, on his 1998 Federal income tax return. We view the attachment to the 1998 Form 1040, and, in particular, petitioner's unsupported and unjustified anticipation that he will incur no tax liability for 1998, as raising a serious question as to whether the 1998 Form 1040 was an honest and reasonable attempt to satisfy the requirements of the tax law, and we conclude, and find, that it was not.

On the basis of Sloan v. Commissioner, supra, Beard v. Commissioner, supra, and Lange v. Commissioner, supra, we hold that neither the 1998 nor 1999 Form 1040 constituted a reasonable attempt to satisfy the requirements of the tax law. Therefore, neither constituted a valid return, and petitioner is liable for the 25-percent addition to tax under section 6651(a)(1) for failure to timely file a return for 1998 and 1999.

4.  2001 and 2002

Because petitioner was not required to file a return for either 2001 or 2002, he is not liable for an addition to tax under section 6651(a) for either year.

B.  Respondent's Section 6654 Determination

Respondent determined that petitioner is liable for a $111.21 addition to tax pursuant to section 6654 for 1999 for failure to pay estimated tax.

Section 6654 provides for an addition to tax in the event of an underpayment of a required installment of individual estimated tax.  Sec. 6654(a) and (b).  Each required installment is equal to 25 percent of the "required annual payment", which, in turn, is equal to the lesser of (1) 90 percent of the tax shown on the individual's return for that year or, if no return is filed, 90 percent of his or her tax for such year, or (2) if the individual filed a return for the immediately preceding taxable year, 100 percent of the tax shown on that return.  Sec. 6654(d)(1)(A), (B)(i) and (ii).  The due dates of the required installments for a calendar taxable year are April 15, June 15, and September 15 of that year and January 15 of the following year.  Sec. 6654(c)(2).  An individual's tax, for purposes of section 6654, consists of income and self-employment tax determined before the application of any wage withholding credits which, under section 6654(g)(1), are treated as payment of estimated tax.  See sec.

6654(f). Section 6654(e) provides certain specified exceptions to the applicability of section 6654, none of which cover petitioner.

Because we find that petitioner did not file a valid return for either 1998 or 1999, his "required annual payment" for 1999 was 90 percent of the tax owed for that year. Sec. 6654(d)(1)(B)(i). On the 1999 Form 1040, petitioner admits that he paid no estimated taxes and that no tax was withheld for that year. The information returns attached to the 1999 Form 1040 corroborate that no income taxes were withheld from any 1999 payments to petitioner. Therefore, we sustain respondent's determination of a section 6654 addition to tax for 1999 subject to a downward adjustment reflecting respondent's concessions eliminating his inclusions of dividend income and capital gain.

III. Respondent's Motion To Impose a Penalty Under Section 6673(a)(1)

Respondent has moved to impose a penalty against petitioner under section 6673(a)(1).

In pertinent part, section 6673(a)(1) provides a penalty of up to $25,000 if proceedings before the Tax Court have been instituted or maintained by the taxpayer primarily for delay or the taxpayer's position in the proceeding is frivolous or groundless. "The purpose of section 6673 is to compel taxpayers to think and to conform their conduct to settled principles before they file returns and litigate." Takaba v. Commissioner,

119 T.C. 285, 295 (2002). "A taxpayer's position is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for [a] change in the law." Id. at 287. "The inquiry is objective. If a person should have known that his position is groundless, a court may and should impose sanctions." Id.

Petitioner's arguments that (1) he is not taxable on wages and/or other compensation, and (2) the notices of deficiency for all of the years in issue are invalid, are shopworn, frivolous, tax-protester arguments that are contrary to settled principles of law. That petitioner made the former argument without analysis or serious thought as to its merit is indicated by the inclusion of the argument in attachments to his returns and in his petitions for 2001 and 2002, years in which petitioner received no wages or other compensation for services performed during those years. In addition, respondent's counsel mailed a letter dated May 5, 2005, to petitioner advising him that he was advancing frivolous arguments and encouraging him "to consult with a reputable tax practitioner before making such arguments in Court." Respondent's counsel attached to his letter excerpts from an IRS publication entitled "The Truth About Frivolous Tax Arguments", which addresses all of petitioner's aforementioned arguments and demonstrates that they are contrary to established law. Under the circumstances, we shall grant respondent's motion

for a penalty under section 6673(a)(1), and we will require petitioner to pay a penalty to the United States of $15,000.

IV. <u>Conclusion</u>

To reflect the foregoing,

<u>An appropriate order will be
issued, and decisions will be
entered under Rule 155</u>.